RICHARD L. COOK, plaintiff in error, vs. the STATE OF GEORGIA, defendant in error.

26  593
108  749

26  593
116  848

26  593
119  123

[1, 2, 3.] On the trial of C., for harboring a slave, he moved to continue, on three grounds; 1st, the absence of a witness, C. 2d. The absence of a witness, L., who would swear, on a certain point, to the contrary of what, it was expected, two of the State's witnesses would swear on the point; 3d. excitement in the public mind against him. The witness, C., appeared before he had commenced with his evidence. The two State's witnesses were not examined on the said point, by the State. No particulars were stated by the counsel, to show the excitement to exist, nor did he give any reason for his opinion, or strengthen it, by the opinion of others.

*Held*, That the refusal of the Court to grant the continuance, was no ground for a new trial.

[4.] The plea of not guilty, is a waiver of the copy of the indictment, and of the list of the witnesses sworn before the grand jury.

[5.] The Court may require an incomplete verdict, to be made complete, before receiving it.

[6.] To "conceal" another's slave, is to "hide" and to "harbor" the slave. Therefore, a verdict which finds concealing and employing, finds *harboring*, *hiding*, concealing and employing.

[7.] It is not necessary, that an indictment for harboring a slave, should negative the *proviso* in the law relating to the offence.

Indictment for high misdemeanor, found and tried before Judge THOMAS, in Taliaferro Superior Court at August Term, 1858.

The indictment in this case charged Richard L. Cook with "concealing, harboring, hiding and employing in his own, service" the slave of another, to the injury of the owner. Upon this indictment he was arraigned and plead "not guilty."

The counsel for Cook then moved to continue on account of the absence of Mary Cook, by whom he expected to prove that she had been living at the house of Cook for from some time before, until some time after the alleged harboring, and that the slave had not been there during the time. And also on account of the absence of Wm. W. Lewis, by whom he expected to prove that he, Cook, owned but one pistol, and that he, Lewis, had that at the time of Cook's arrest, by way of contradicting some of the State's witnesses, who testified, on the committing trial, that he had one at that time. The Court three times requested the counsel to state all his grounds at once. No others were then stated. But after argument upon the motion, and when the Court was about to decide upon it, the defendant moved to be allowed to amend his showing, by filing his affidavit that there was so much excitement in the public mind against him, on account of the recency of the alleged offence, that he could not go safely to trial. The Court refused to consider the affidavit, overruled the motion, and dispatched a Bailiff with an order for Mary Cook and William Lewis to appear and testify in the case.

When a jury had been empanelled and the array was put upon the accused, he filed his affidavit as to excitement with the Clerk, and moved for a continuance on that account then. Which the Court refused.

Counsel for Cook then objected to his being tried under the arraignment, because he had not been furnished previously, or at the time, with a copy of the indictment and list of witnesses. The Court overruled the objection, and a copy and list were furnished him. Whereupon he moved to con-

tinue, on all of the foregoing grounds, which the Court refused.

A jury having been selected and sworn, counsel for the accused moved to take a verdict of not guilty, on the grounds following:

1st. Because the indictment charged no crime.

2d. Because the indictment did not allege that Cook "did not have an apparent well founded claim to the slave, and had not had him in peaceable possession for twelve months previous to the commencement of said harboring."

3d. Because the accused was charged with "concealing," "harboring," "hiding" *and* "employing," instead of concealing, harboring, hiding *or* employing.

4th. Because the indictment charged four distinct offenses.

The Court overruled the motion for a verdict. As the witnesses, who gave testimony before the grand jury, were successively called to the stand, counsel for the accused moved the Court to exclude them from testifying, *because* he had not been furnished with a list of them before arraignment, which the Court refused.

After the State had closed its testimony, counsel for the accused called for the witnesses, Mary Cook and Wm. Lewis, and asked time to consult with them. Mary Cook appeared, and counsel conferred with her at length. But the officer who had been sent with the order, made a return that he had "served it on Lewis by leaving a copy at his most notorious place of abode, he being away." Counsel for the accused then moved to suspend the trial until Lewis should be produced. The Solicitor General offered here, as he had when the first motion for a continuance was made, to "admit and not contest" what it was proposed to prove by Lewis. The Court refused the motion to suspend, and ordered the trial to proceed.

Cook vs. The State.

### Brief of Evidence.

*Benjamin F. Rogers*, sworn, says: He was the owner of Austin for eighteen months, who had been run away three months; was caught 27th July, sold him 28th July after the arrest of defendant on this warrant. Witness lived in Warren county eight or nine miles from Crawfordville. First saw negro after he ran away in Crawfordville in custody of Mr. Humphrey, and does not recollect who else. Mr. Ellington was one, he thinks. Company had separated, and he does not remember who delivered him. Mr. Ellington claimed reward; not paid yet. Conversed with Mr. Nelson about July 21st and 22d about this runaway. Negro worth $600 to $700 before he ran away. Negro looked not very ragged nor dirty. On 27th July his clothes were torn by dogs. Did not look like the same negro he was before he ran away. Was worth then, or sold for $500. Looked poor, as if worked hard.

*Thomas J. Peck*, sworn, says: Went last of July with Sheriff to search Cook's house. Sheriff told Cook he had a search warrant. Cook allowed search. Sheriff, Humphrey, Tilly and witness entered dwelling and found nothing; entered smoke house, found platform and blanket; seemed for some one to lie on. Searched gin house and stables—found nothing, and returned to horses about sixty yards from stable and one hundred from the house. Circled with the dogs round the house. Dogs started the negro; negro ran rather towards the house, and was caught about 250 yards from the house. While circling saw Cook ploughing in the field. After catching negro, Sheriff arrested Cook. Negro was the same claimed and sold by Mr. Rogers; was taken to Crawfordville. Cook was in the house when the company came up. Owns no negro, nor hired any this year, as far as witness knows. Search made before breakfast. Cook went with party searching. After which party went off with dogs, and started trail on Cook's land. Negro was caught on Mr. Jones' land. Cook had pistol when in the

smoke house door.   Does not remember to have seen pistol when he was arrested; thinks Cook then had no coat or vest on.

*John K. Nelson,* sworn, says:   He is acquainted with negro Austin; has known him twenty odd years.   Last saw him in town, and last before that at Mr. Cook's on the 24th July, this year, with him, Cook, while the negro was run away.   Saw negro pick up something which looked like boards, and walk along with Cook; the negro was talking. Witness was 150 to 200 yards off.   Knows negro well; is certain of his identity, as well as of Cook's.   Sun was one-half hour high.   Had been waiting three-fourths or one hour before seeing Austin.   Was sitting down to conceal himself—did not wish to be seen.   Negro had no coat on. Pants and shirt of cotton.   Saw a woman, but does not know who she was.   Saw children.   Wears spectacles for short distances, but raises them for long distances.

*George C. Fraser,* sworn, says:   He knows Austin; saw the negro first while Cook had him hired.   Cook had him for a month or two.   Negro hired his own time while Cook had him.   This year he saw him, he supposed, in Mr. Cook's field.   Mr. Cook had no one hired this year as witness knows.   Negro corresponds in size and general appearance with Austin.   This was two or three weeks before the first search warrant.   Witness was off some 200 yards; it was about 10 or 11 o'clock.   Believes, from general appearance, it was Austin.   The field not near the public road.   Negro was chopping.   Does not remember that the corn, which was half thigh high, was grassy.   Negro did not turn to look at him.   Did not see him there before this year. Did not watch before.

*Mary Cook,* sworn, says:   She lives with her brother, the prisoner.   He has wife and five children.   Was at home on 24th; was there on the morning of 24th, half hour by sun; generally fed the chickens.   Saw no negro.   Brother keeps a little meal, &c., in smoke house.   There was a plank in

smoke house across the corner, and blanket on it; placed there for the baby to play on. Children placed planks there to play on ; baby sent into smoke house sometimes to be out of the way while work is going on. Baby about eight months old. No one slept in smoke house. Did not see Austin.

*J. N. T. Jones.* Resides one-half mile from Cook's. Cook's field 300 yards from Cook's house. Never saw negro at Cook's. Don't remember the amount of Cook's cotton crop. Did not often see Cook at Powelton; not there much himself.

*Lewis Tyres* sworn, says: Cook has been to Powelton very often this year.

*Jas. T. Andrews* sworn, says: He lives in Powelton. Cook seen by him several times a week. Cook generally left in the evening. Cook usually came in his working clothes.

*Rhodes, Sheriff*, sworn, says: He was present at search for boy at Cook's. Saw the boards and blanket in smoke-house; boards two to two and a half feet high, and four or five long. Was examining for signs. Didn't notice if boards were nailed. Cook made no ḁresistance to search. Saw him at gin-house and next in field, about 9 o'clock; negro was started. Cook made no attempt to escape.

After the testimony had closed, and argument had, and the jury had been charged by the Court, they retired and brought in the following verdict: " We, the jury, find the defendant guilty of concealing and employing." The So-licitor General moved to amend the verdict by adding "the negro to the injury of the owner." Counsel for the accused objected. The Court enquired of the jury if this was what they intended to find. And upon receiving an affirmative answer, allowed the amendment. Counsel for the accused objected to the reception of the verdict. The Court over-ruled the objection, and ordered the verdict to be entered on the minutes.

Counsel for the accused moved for a new trial on the

ground that the Court erred in all of the aforesaid rulings, orders and refusals.

Because the accused was not furnished previous to, nor at the time of arraignment, with a copy of the indictment and list of witnesses who gave the testimony before the grand jury.

Because the verdict does not find the accused guilty of any crime.

Because the verdict does not cover all the issues made.

Because the verdict was contrary to law, and contrary to evidence.

Because of newly discovered material evidence.

In support of the last ground for a new trial, the accused filed his own affidavit, and also the affidavit of Charles W. Gee.

The Court granted a rule *nisi* requiring the Solicitor General to show cause why a new trial should not be granted, who exhibited the several affidavits and the agreement of counsel as to facts, in answer to the last ground for a new trial.

The Court overruled the motion.

Afterwards, during the term, the accused moved to arrest the judgment of the Court:

1st. Because the indictment charged no crime.

2d. Because the indictment did not charge that the defendant did not have an apparent well founded claim to the slave, and had not been peaceably possessed of him twelve months previous to the alleged "harboring, hiding, concealing and employing."

Because the indictment charged four distinct crimes.

Because the verdict did not find the accused guilty of any crime.

Because the Court allowed the verdict to be amended.

Because the verdict was without evidence.

Because the verdict was contrary to evidence.

Because the verdict was without sufficient evidence.

Because the verdict was contrary to the charge of the Court.

The Court overruled the motion in arrest, and the defendant, by his counsel, excepted to all the aforesaid several rulings, orders and refusals, and now assigns the same as error.

WASDEN & NELMS, for plaintiff in error.

Solicitor General DANIEL, for the State.

*By the Court.*—BENNING J. delivering the opinon.

All the questions in the case, are contained in the motion for a new trial, and, in the motion in arrest of judgment. I shall confine myself, therefore, to those two motions.

I proceed first to the motion for a new trial.

The first three grounds of that motion, raise this question—did the Court below err, in refusing the motion for a continuance?

The grounds of the motion for a continuance, were three; 1st. The absence of the witness, Mary Cook; 2d. The absence of the witness, Wm. Lewis; 3d. excitement in the public mind, against the accused.

[1.] Mary Cook appeared before the accused had commenced to give his evidence to the jury, and she was examined by him. Therefore, there is nothing in the first ground.

The fact which the accused expected to prove by William Lewis, was, that he, the accused, owned only one pistol, and that, at the time of his arrest, Lewis was in possession of this. And he wished to prove this fact, to contradict two of the State's witnesses, who had testified at the committing trial, that he, when arrested, was armed with a pistol.

[2.] But the State did not on this, the trial before the jury, draw any such evidence from these two witnesses, or from either of them. And, therefore, if Lewis had been present at it, he could not have been examined on the point. His ab-

Cook vs. The State.

sence, then, as things turned out, was of no consequence to the accused.

The third ground was excitement in the public mind, against the accused.

He states no particulars in support of this ground ; he merely gives what must be his own mere opinion on the subject; and he does this without giving his reasons for that opinion ; and he fails to present any corroborating opinion from others.

The offence was, in grade, one of no great enormity—harboring a slave; nor was it attended by any circumstances of extraordinary atrocity.

There was, then, ground for a strong presumption, that the accused was mistaken in his opinion as to the excitement against him, in the public mind.

[3.] This presumption being opposed to the vague opinion of the accused, we think, that the Court was justified in acting on it, rather than on the opinion, and, therefore, was justified in holding this third ground of the showing, insufficient.

Such a ground must, from its nature, in almost every case, expect to encounter more or less of distrust and suspicion. It was not the only ground in *Howell's* case, 5 *Ga.*

The fourth ground was, that no copy of the indictment and no list of the witnesses who had testified before the grand jury, had been furnished to him before his arraignment.

But, nevertheless, he pleaded, not guilty.  And his doing so is evidence, that he did not need such copy and list, for any purpose of his defence; and, therefore, is evidence from which, it was to be implied, that he had waived them.   He was not bound to plead at all till he had been furnished with them.   He might have ojected to being arraigned.

[4.] Therefore, we think this fourth ground also insufficient.

The fifth ground is the same in substance as the fourth.

The sixth occurs again, in the motion in arrest of judgment, and it will be there considered.

The seventh is the same in principle as the fourth.

The eighth has already been decided, in the decision of the first ground of the motion for a continuance. It does not appear, that Cook lost anything by the fact, that the witness, Mary Cook, was not present at the beginning of the trial; and unless it appeared that he thereby lost something, it is to be presumed, that he lost nothing. Mary Cook was present by the time she was needed as a witness.

The ninth ground has been already decided, viz., in the decision of the second of the grounds in the motion for a continuance.

The tenth ground is, that the Court erred in receiving the verdict, and in allowing it to be amended.

The verdict, as first returned, was in these words; "We, the jury, find the defendant guilty of concealing and employing."

The Solicitor General moved to amend this verdict by adding to it, the words; "the negro to the injury of the owner." The Court, on the jurors all answering, that this was what they intended, allowed the amendment to be made.

[5.] We see nothing wrong here. If the verdict was not full when returned, it was the duty of the Court not to receive it, but to require it to be made full. And the Court here, did no more than this. The amending was, really, the act of the jury, not of the Court. Indeed, we incline to think, that all that was expressed in the verdict after the amendment, was implied in it before the amendment.

The eleventh ground is, that "the verdict does not find the defendant guilty of any crime."

The verdict was, that the defendant was "guilty of concealing and employing the negro, to the injury of the owner."

[6.] The charge in the indictment was, that Cook "did conceal, harbor, hide and employ" the negro. The verdict con-

tains nothing expressed, about *harboring* or *hiding*. But it says, that he *concealed* the negro. And we think, that to conceal a negro, is to hide and to harbor the negro. To conceal a negro, evidently is, to hide him; and it is also, to harbor him. It may be true, that there can be cases of harboring, that will not be cases of concealing. If one even openly and publicly protects a slave from his owner, the case will, perhaps, be a case of harboring. But it is likewise true, that there can be no case of concealing, that will not also be a case of harboring. To conceal then, is both to harbor and to hide. It follows, that the verdict, in finding Cook guilty of concealing and employing, found him guilty of *harboring*, *hiding*, concealing and employing. And that was the charge against him.

This eleventh ground is, therefore, not true.

The twelfth ground is but the eleventh, expressed in another form.

So is the thirteenth.

The fourteenth ground is, that the verdict was contrary to law, and was without sufficient evidence to support it.

We think differently. We let the evidence speak for itself.

The fifteenth and last ground, is, newly discovered evidence; viz., evidence going to show, that Nelson, one of the witnesses examined by the State, was to be a gainer by the conviction of Cook.

From what took place for and against this ground, the following particulars appeared, viz., that Rogers, the owner of the runaway slave, had offered a reward for him in the newspapers, the offer being to this effect—that he would give ten dollars for the delivery of the slave to him, and "fifty dollars, if found in the possession of any white man who" was "attempting to make off with him, with sufficient proofs to convict any such person or persons of the same;" that Nelson knew of this offered reward, and thought himself entitled to it; and that Rogers intended to recognize his claim to it,

if made; that Mr. Bell, one of the counsel for Cook, knew of the offered reward, he having been called upon, to decide a question connected with the reward.

It is thus seen, that. what turned out to be the fact, was really, not a newly discovered matter; Cook's counsel knew of the existence of the public advertisement, and he ought, in common diligence, to have assumed, that the witnesses would also know of it, and so he ought, on the trial, to have been prepared to bring out the existence of the advertisement and their knowledge of it.

Again, the terms of the offer, are—"if found in the pos-session of any white man who is attempting to make off with him, with sufficient proofs, to convict any such person or persons of .the same." But the charge against Cook was, not for making off with the slave, but, for harboring him. So, strictly speaking, no witness could, on this charge, be en-titled to the reward.

Lastly, we think, that if Nelson's evidence was struck out, the rest of the evidence would be sufficient to support the ver-dict.

We think, then, that this fifteenth ground was insuffi-cient.

And so, we think, that the Court below was right, in over-ruling the motion for a new trial.

I proceed to the motion in arrest of judgment.

The second ground in that motion is but the first unfold-ed. So I pass to that second ground. It is, that the indict-ment does not charge, that Cook did not have an apparent well founded claim, to the slave, and does not charge, that Cook had not been peaceably possessed of him for twelve months next preceding the commencement of the harbor-ing, &c.

The law on which this ground is put, is as follows: "Any person who shall conceal, harbor, .hide or employ, in their own, or in the service of any other person or persons, any slave to the injury of the owner thereof, shall be guilty of a

high misdemeanor, and on conviction thereof, shall be punished by imprisonment and labor in the penitentiary of this State, for a time not exceeding three years nor less than one year, at the discretion of the Court. *Provided nevertheless*, that on the trial of this offence, the person charged with it, shall be acquitted, if he or she had an apparent well founded claim, to the slave, so harbored or concealed, and had been peaceably possessed of him twelve months next preceding the commencement of such harboring or concealing." *Cobb Dig.*, 830–826.

The question is, was it necessary for the indictment to have negatived this proviso?

And we think that it was not. The part of this law *preceding* the proviso, made harboring, &c., to the injury, &c., a *complete crime*, with a punishment annexed. And what the proviso says, is matter to show, not, that harboring a man's slave in any case, is innocent, but, that in some cases it may be *excused* or *pardoned*. The proviso refers to matter which, if it exists, may be offered in excuse of the crime It is a crime in every case to harbor another man's slave— so says the first part of the law. But in some cases, there may be things which shall excuse this crime. So says the second part of the law—the proviso.

In this respect, the case differs from the case of *Elkins vs. State*, in the 13 *Ga. R.*, 435, a case founded on the law against retailing spirits without a license. That law does not make *all* acts of retailing without a license, a crime, but only those that may be done outside of "corporate towns."

But even were there no difference between the two cases, I should still myself, consider the indictment in the present case, sufficient. The indictment certainly "states the offence," "so plainly that the nature of the offence charged," might have been "easily understood by the jury," and when that is so, the Code says, that the indictment is to be "deemed sufficiently technical and correct." *Cobb Dig.*, 833.

[7.] We think, then, that this ground was not sufficient, to require the judgment to be arrested.

The other grounds in the motion to arrest the judgment, are the same as some of those taken in the motion for a new trial. They, therefore, have already been considered.

Our conclusion, then, is, that the Court below was also right, in overruling the motion in arrest of judgment.

So the judgment of the Court must be affirmed—generally.

Judgment affirmed.