NELLING vs. THE INDUSTRIAL MANUFACTURING COMPANY.

1. Jurors cannot impeach their verdict, and affidavits by members of the jury or of counsel as to their sayings after dispersing, cannot be received for that purpose.

2. Where a jury were considering a case late on Saturday evening, it was improper for the bailiff to inform them that court was about to adjourn, and that unless they made a verdict soon, they would be kept over until 10 o'clock the following Monday morning; but where it appeared that this information was not given as coming from the court, and the affidavit, which was the only evidence of the fact, was not positive, but was made "subject to correction"; and where the jurors must have known the lateness of the hour and the necessity of adjourning over Sunday; and where, at the same time, an envelope was given them in which to seal their verdict when reached; a new trial will not be required, although, in fact, the court had stated to counsel, in the absence of the jury, the probable necessity of an adjournment until Monday.

3. Where a servant is employed upon some work which, equally within the knowledge of the master and servant, is of a dangerous nature, the master is not liable for the consequences of an accident occurring to the servant in the course of that employment, unless there be negligence on the part of the master, and the absence of rashness on the part of the servant. A servant is bound to exercise his own skill and judgment, so as to protect himself in the course of his employment, and the master is not regarded generally as warranting his safety. He is himself bound to exercise proper care, and cannot claim indemnity from the master for an injury resulting to him which might have been prevented if he had himself been reasonably vigilant.

(a) The verdict in this case was not contrary to law or the evidence.

November 23, 1886.

Jury and Jurors. Practice in Superior Court. Master and Servant. Damages. Before Judge EVE. City Court of Richmond County. March Term, 1886.

Reported in the decision.

GARRARD & MELDRIM; LEONARD PHINIZY; SALEM DUTCHER, for plaintiff in error.

J. B. CUMMING; BRYAN CUMMING, for defendant.

HALL, Justice.

This was an action by a mechanic against his employer for personal injuries, sustained in removing and placing in proper position a machine on which he had been working out of doors, and upon which he was about to work again when it had been removed into the house and was properly adjusted so as to be used.   It fell when he was endeavoring to place staves under its legs so that the treadle by which it was run might have room to operate, and parts of two of his fingers were cut off by the blade attached, as he alleged and proved, in consequence of the springs which kept it in place being too weak and old to hold it.   He testified that he knew nothing of any defect in the machinery, and that the agent of the company, who was present when the removal took place and directed and superintended it, gave him no information of the existence of any defect in the particulars named.   The court charged the jury, at the request of defendant's counsel, that " if the plaintiff was in charge of this machine for the purpose of managing it and working with it, it was his duty to discover any defect and report it to his superior, which if he failed to do, or if he did do so, and continued to work with the machine, he cannot recover."   The jury found for the defendant, and the plaintiff made a motion for a new trial because of this erroneous charge, and because the verdict was decidedly and strongly against and contrary to evidence ; and because, after the jury had charge of the case for some hours, and being unable to agree, they were informed by the bailiff attending them, late in the afternoon of Saturday, that the court was about to adjourn, and unless they made a verdict soon, they would be kept over until 10 o'clock of the following Monday.   When this information was given them, they found a verdict for the defendant in a short time.   The court, it seems, had informed counsel, in the absence and out of the hearing of the jury, that the case would have to take this direction, when it had been

previously agreed that a sealed verdict, when found, might be returned. This remark was not reported to the jury as coming from the judge, who had no intention of forcing them to find a verdict, or to interfere with the agreement of counsel in relation to a sealed verdict. In support of the last ground, an affidavit of Bugg, the bailiff attending the jury, who signed the same "subject to correction," was relied on, to the effect that, while the jury were up stairs in their room, he told them that if they did not make a verdict soon, he would have to keep them over until 10 o'clock A. M. Monday, as the court would adjourn soon ; this was said in reply to questions asked by some of the jury, but he did not intimate to them that this came from the judge, and it was not communicated with a view of forcing a verdict, for, at the same time, he handed them an envelope, and told them it was for a sealed verdict. Several of the jurors made affidavits, as did also counsel, Mr. Phinizy, which the plaintiff offered in support of this ground of the motion. The motion was refused, and he excepted, and assigns the judgment overruling the same as error.

1. It seems that the court refused to consider the affidavits of the jurors and of plaintiff's counsel, for the reason that the former could not be heard to impeach their verdict, and the matters deposed to by the latter were merely the sayings of members of the jury after they had dispersed, and of others. In this there was no error.

2. While the bailiff's conduct was reprehensible, and subjected him to censure and rendered him liable to punishment, yet conceding that the statements contained in his affidavit are positive and unqualified, it is scarcely doubtful to our mind that they were not necessarily such as to force a verdict, which the jury were unwilling or were reluctant to return ; they knew that it was late in the evening of Saturday, that the hour for adjournment of the court was approaching or had arrived, and that no session could be held on Sunday, and that there could be none until the usual hour of meeting on Monday; at the very

same time, an envelope was handed to them, in which to enclose and seal up their verdict; and conceding to them ordinary intelligence, it is scarcely to be doubted they understood from this that when the verdict was rendered and sealed up, they were at liberty to disperse and go to their homes, unless perchance they failed to agree before 12 o'clock Saturday night and their labors did not extend into Sunday.    This case falls short of any of those where new trials have been granted for authorized or unauthorized communications made to the jury having a tendency to force a verdict when they desired further time for deliberation before reaching a conclusion.    This more closely resembles the case of *Collins vs. The State,* decided at the present term (*ante,* p. 87), than any of the preceding cases to which we have been referred, or that our own research has brought to light, where we held that where, soon after retiring to their room to deliberate upon the verdict, the court directed the sheriff to inquire of the jury if they were likely to agree soon, and to inform them that their services were needed in the court-room, and the sheriff so said to them, it was for the party complaining of such action to show affirmatively that he was thereby injured; and in the absence of such a showing, the verdict would not be disturbed.    But if all this were otherwise, no case of improper interference with them is made out by the bailiff's affidavit, which, as has been shown, was the only evidence offered in support of this ground of the motion; that affidavit, expressing on its face that it was "subject to correction," made no positive statement of any fact, and amounted to nothing.    1 Bacon's Ab. tit. Affidavit(c).

3. The charge of the court excepted to may be most conveniently considered with the remaining grounds of the motion.    While it may, in a measure, be subject in a slight degree to the criticism made, that it was "too broad;" in other words, that it was not sufficiently guarded; that the terms in which a correct principle is attempted to be announced are somewhat inapt and inappropriate; yet we

do not think it so defective in this particular as necessarily to have misled the jury, and thus injured the plaintiff; neither can we agree with counsel that it was too strong. The principle which it substantially announces, if applicable to the facts shown by this case, is, that while it is the duty of employers to furnish their servants with reasonably safe implements and tools for use while working, yet if the servant is aware of the dangerous character of a particular tool or instrument, or might, by the exercise of ordinary care, have been apprised of it, and continues nevertheless to use it, he cannot have redress for any damage he sustains by its use; nor does it alter the rule that the servant knowingly used a dangerously defective tool in the presence of and by the immediate orders of the master, or one who stands in his place and exercises his authority. *Central Railroad vs. Haslett*, 74 *Ga.* 59. The rule expressed by Wood, in his treatise on Master and Servant, §324, is more directly applicable to the facts in evidence here than that above stated, and is thus stated: " When a servant is employed upon some work. which, equally within the knowledge of the master and the servant, is of a dangerous nature, the master is not liable for the consequences of an accident occurring to the servant in the course of that employment, unless there be negligence on the part of the master and the absence of rashness upon the part of the servant. A servant is bound to exercise his own skill and judgment, so as to protect himself in the course of his employment, and the master is not regarded as warranting, generally, his safety. He is himself bound to exercise proper care, and cannot claim indemnity from the master for an injury resulting to him, which might have been prevented if he had himself been reasonably vigilant."

The plaintiff is the only witness who testified, and though he insists that he made out his case, and that his testimony, uncontradicted by other evidence, demanded a finding of some amount in his favor, we are of a different

opinion. There are facts testified to by him that justified the jury in finding that the damage complained of resulted from his own negligence and want of ordinary care in the management and use of the machine, and in bolstering it up so that the treadle would have sufficient room to play and be used in operating it; though he swears that he was a "green hand" in the use of this particular machine, he shows that he was an experienced cooper, having served an apprenticeship and worked all together seven years at the trade; that he was engaged in operating this machine out of doors for sometime before he removed it to the house, and discovered that there was a hole dug in the ground for the treadle to work in; he likewise stated that he could have taken hold of it in no other place than he did to raise it up and put it in a position to be operated; but the machine itself was exhibited to the jury, and they had every opportunity of judging whether this statement was correct; there is no description of it, either general or special, in the record sent to this court, and we are not furnished with the means of determining, as was the court below, the accuracy of this particular statement, and without such information we cannot undertake to determine the fact. If there was error in this respect, it was incumbent upon him to show it. The court, who saw and heard all that occurred on the trial, was satisfied there was none, and we cannot undertake to determine that he abused his discretion in so holding.

Judgment affirmed.