## GROVES *v.* THE STATE.

1. Where a jury trying a criminal case returns and publishes in open court a verdict of not guilty, which is regular in form, the judge has the legal right and authority, on his own motion, to poll the jury, and, when some of them have said that the verdict "was not their verdict," to refuse to receive the verdict and to direct the solicitor-general to erase the verdict from the indictment, and the jury "to retire to their room and consider the case further."
2. Where, under the circumstances stated in the preceding headnote, counsel for the defendant "objected to the erasing of the verdict of not guilty from said indictment, and to the court's ordering the jury back to their room to further consider said case, and moved the court to receive the verdict as read by the solicitor-general in open court and allow it to be filed," the court did not err in overruling the motion.
3. When the jury, under the circumstances stated in the first headnote above, had followed the instructions of the court, retired to their room, and, after a further consideration of the case, returned a verdict of guilty, the court did not err in receiving this verdict and entering judgment thereon over the protest of counsel for the defendant that

Criminal Law, 16 C. J. p. 1098, n. 86; p. 1115, n. 50, 51, 52; p. 1116, n. 68.

Trial, 48 Cyc. p. 1874, n. 60.

Verdict, 40 Cyc. p. 187, n. 46.

11

the jury had "previously returned a verdict into open court, which was read and published in open court, of not guilty."

No. 5147. APRIL 16, 1926.

Questions certified by Court of Appeals (Case No. 16775).

*Maddox, Maddox & Mitchell,* for plaintiff in error.

*C. C. Pittman, solicitor-general,* contra.

GILBERT, J. The Court of Appeals certified certain questions, which are sufficiently indicated in the headnotes. In order to return a correct answer to the questions propounded, it is essential to first state some of the basic principles involved, and to bear in mind the character of the proceedings.

What is a verdict and what does it mean? In *Anthony* v. *Anthony,* 103 *Ga.* 246, at p. 251 (29 S. E. 923), this court said, the meaning of the word verdict is a "true saying." "A verdict is the ascertained truth to which effect is given by the judgment of the court." Vaughan *v.* Cade, 2 Rich. (S. C.) 49, 52. "A verdict is a declaration of the truth as to the matters of fact submitted to the jury." Shenners *v.* West Side St. Ry. Co., 78 Wis. 382, 387 (47 N. W. 622) ; McBean *v.* State, 83 Wis. 206, 211 (53 N. W. 497). In fact the word imports verity, and we may add that whenever a verdict is not "a true saying" and is not a verity, its meaning, as said in *Anthony* v. *Anthony,* "is set at naught and rendered ridiculous." "It is a very important act. It is a culmination of the trial, and embodies the conclusions of the jury on the questions of fact litigated upon the trial." French *v.* Merrill, 27 App. Div. 612 (50 N. Y. Supp. 776, 777). It is a part of a legal investigation in a court; and our Penal Code, § 1008, declares: "The object of all legal investigation is the discovery of truth." In its highest conception "a court is a place where justice is judicially administered." It would appear that a verdict delivered into court by a jury, which does not comport with the findings of that jury, is not a true saying. It would not speak the truth as the jury found it. The jury's oath is to give a "true verdict." A verdict declaring contrary to the findings of the jury is not a true verdict. To hold otherwise would be to treat a solemn legal investigation as a game where victory may be won by inadvertence and methods that are worse. We do not overlook the fact that there are certain fundamental safeguards properly thrown around the defendant in a criminal case, which may free

a guilty man; such as the constitutional inhibition against placing one in jeopardy a second time, the necessity for receiving verdicts in open court, the privilege and necessity of the presence of the accused at all stages of the trial, the benefit of counsel, etc. The principles above stated are not contrary to any of these. Though the powers of judges are more limited in this State than those possessed by the English judges, yet it has always been recognized in Georgia, and, so far as we are aware, in other American States, that the trial judge has the power to send the jury back for further consideration of the case where it is uncertain that the jury intended to find as their verdict purports. *Cook* v. *State,* 26 *Ga.* 593; *Mangham* v. *State,* 87 *Ga.* 549, 552 (13 S. E. 558); 16 C. J. 1098, § 2576; 38 Cyc. 1874, notes 56, 60; 25 Standard Enc. Proc. 1031 (5); compare *Williams* v. *State,* 46 *Ga.* 647.

There being no controlling statute in this State, the common law prevails. Under the English common law, until the verdict was accepted by the court and recorded, the jury could be sent back for a reconsideration whenever it appeared that the verdict was not correct in form or was uncertain or did not speak the truth. In Coke upon Littleton, 227, 7 R. 2, it is said: "After the verdict recorded the jury can not vary from it, but before it be recorded they may vary from the first offer of their verdict, and that verdict which is recorded shall stand." In 2 Hale's Pleas of the Crown, 299, it is said: "Now touching the giving up of their verdict, if the jury say they are agreed, the court may examine them by poll, and if in truth they are not agreed, they are fineable. 29 Assiz. 27. 40 Assiz. 10. If the jurors by mistake or partiality give their verdict in court, yet they may rectify their verdict before it is recorded, or by advice of the court go together again and consider better of it, and alter what they have delivered. Plow. Com. 211, b. Saunder's case." At common law it was not customary for the jury to write out the verdict, as it is now done in this State, in criminal cases. In many civil cases in this State verdicts are now prepared for the jury to sign. Formerly at common law, "The procedure in returning verdicts in cases of felony, leaving off some of the formalities in reference to forfeiture of estates, is in substance as follows: When the jury have come to a unanimous agreement with respect to their verdict, they

return to the box to deliver it. The clerk then calls them over by their names, and asks them whether they agree on their verdict, to which they reply in the affirmative. He then demands who shall say for them; to which they answer their foreman. This being done, he directs the prisoner to hold up his right hand, and addressing the jury says: 'Look upon the prisoner, you who are sworn. How say you? Is he guilty of the felony whereof he stands indicted, or not guilty?' The foreman then answers 'guilty' or 'not guilty,' as the verdict may be. The officer then writes the word 'guilty' or 'not guilty,' as the verdict is, on the record, and again addresses the jury: 'Hearken to your verdict, as the court hath recorded it. You say that (A) is guilty (or not guilty) of the felony whereof he stands indicted, and so say you all.' 1 Chitty, Crim. L. 636; Com. *v.* Tobin, 125 Mass. 203, 28 Am. Rep. 220; Givens *v.* State, 76 Md. 485." Grant *v.* State, 33 Fla. 291 (14 So. 757, 23 L. R. A. 723, 728, 729).

An English case very similar to this case was Reg. *v.* Vodden, 6 Cox's Criminal Law Cases, 226. In that case the prisoner was tried for larceny. One of the jurors, called chairman, delivered a verdict of "not guilty," which was entered by the clerk on his minutes, from which the record is made up. The prisoner was thereupon discharged out of the dock. The other jurors at that time interfered, with the statement that the verdict was "guilty." Then the prisoner was brought back into the dock, the jury was asked what the verdict was, and all twelve of them answered that it was "guilty," and that they had been unanimous. The chairman of the jury stated that he had said "guilty," and not, as he was understood to say, "not guilty." The counsel for the prisoner objected to the receipt of the new verdict, for the reason that "the wrong verdict is now on the record of the court." The judges held that "a wrong verdict was taken in the first instance," and that a true verdict was correctly received. Counsel insisted that an interval had elapsed between the announcement of the first verdict and the receipt by the court of the second; whereupon the judges said: "We say only that the interval in this case was not too long; we are all agreed that what took place was quite right. It is what constantly occurs in ordinary transactions of life,—a mistake was corrected within a reasonable time, and on the very

occasion when it was made." Accordingly the conviction was affirmed.

The American courts, so far as we are aware, have stated, in almost the same words always employed by the English courts, that the jury could be returned for further consideration of a case until the verdict had been accepted and recorded. As modified, in this State, the rule is well settled that after a poll of the jury or a discharge of the jury the court no longer has any power to return the jury to their room for further consideration. Also, it is well to state that any control over the jury must be very carefully exercised, to the end that the jury may not be influenced in the slightest as to their finding by anything that the judge may have said to them in regard to reconsidering the case. It is equally well settled that until the jury has been polled and the verdict has been received as the true verdict of the jury any juror may bring to the attention of the court the fact that the verdict announced is not his verdict. "It is within the power of any juror before leaving the jury-room, or even after coming into court, to recede from the verdict to which he has previously assented at any time before it has become too late to poll." *Cooper* v. *State,* 103 *Ga.* 63, 65 (29 S. E. 439). A similar case is Harris *v.* State, 31 Ark. 196, where it was held: "The object in polling the jury is to ascertain if the verdict announced by the foreman is the verdict of all the jurors; and if there is any reason to doubt that all the jurors concur, it is competent for the court, of its own motion, to cause the jury to be polled." Another case in which the question was elaborately considered is Grant *v.* State (Fla.), supra. There the jury returned into court a verdict in the following words: "We, the jury, find the defendant guilty of manslaughter in the first degree." The court stated to the jury that there were no degrees of manslaughter, and that accordingly the verdict was not in form, requiring them to return to their room for further consideration. The jury returned to their room, and afterwards, on the same day, returned a verdict as follows: "We, the jury, find the defendant guilty of murder in the first degree, and recommend him to the mercy of the court." The defendant filed a motion for new trial, one ground of which was that the court erred in rendering judgment on the second verdict and refusing to accept the first one, "for the reason that the verdict for manslaughter in the

first degree operated as an acquittal of said offense of murder, the latter being a higher offense and embracing the former." The Supreme Court of Florida affirmed the judgment of the trial court, but agreed with the contention of the plaintiff in error that the verdict first rendered might have been lawfully received, as the words "in the first degree" after the word "manslaughter" could have been treated as surplusage. The ruling of the court was summed up as follows: "We can not say, however, that the court erred in referring the matter to the jury for correction in the particular mentioned; and when this was done, they had the right to reconsider the case and bring in a new verdict."

There is no suggestion in the questions propounded that the court influenced the jury in this case in the slightest to make a change in their verdict. It is assumed that the court made no comment, directly or indirectly, calculated to lead the jury to find a verdict of guilty. We repeat, "The object of all legal investigation is the discovery of truth." There must be the unanimous assent of the entire twelve jurors before there is a legal verdict. When it develops that such is not the fact, there is no verdict. If the jury has not dispersed, they should be sent to the jury-room with direction to consider the case for the purpose of reaching an agreement on a verdict. In no other view can justice be judicially administered. Daniel Webster said, in his eulogy of Mr. Justice Story, "Justice, Sir, is the great interest of man on earth. . . Wherever her temple stands, and so long as it is duly honored, there is a foundation for social security, general happiness, and the improvement and progress of our race."

. *All the Justices concur, except*

RUSSELL, C. J., dissenting. One reason why I can not concur in the opinion of the majority is that my associates' answer to the question is very plainly based in part upon facts not to be ascertained from the question, and this court has several times held that its answer to a question certified by the Court of Appeals will be confined absolutely to the identical question asked. It has even declined in one instance to answer questions propounded by the Court of Appeals, upon the ground that to intelligently answer it would be necessary to examine the record, which the court declined to do. It is said in the opinion that "there must be unanimous assent of the entire twelve jurors before there is a

legal verdict." The Court of Appeals states as a fact that the verdict of not guilty was "regular in form" when it was *returned and published in open court*. There is no evidence before us to indicate that there was any miscarriage of justice in this verdict of not guilty, and possibly the evidence before the Court of Appeals would have authorized the jury to find a verdict of not guilty. In these circumstances the Court of Appeals inquires whether the judge has any legal right or authority on his own motion to poll the jury. It is true the question proceeds to say that "when some of them said that the verdict was not their verdict," has he the power to refuse to receive the verdict and direct it to be erased, and direct the jury to retire to their room and consider the case further? It seems to me that the first question to be answered is whether the judge has the right in any event to poll the jury. If he has no right to poll a jury, what he may have done after having polled it would necessarily be nugatory and void. I am fixed in the conviction that a judge in this State is neither authorized nor permitted of his own motion to poll a jury. I care not for the holdings of English courts. I care not for decisions from other jurisdictions in this country. I am bound by the laws of Georgia, while other authority can in no event be more than persuasive. This court has frequently held that the right of polling a jury was one of very great value to one accused of crime; so much so that this court has never failed to reverse the lower court where there was any substantial infraction of the right. In *Blankinship* v. *State*, 112 *Ga.* 402 (37 S. E. 732), Mr. Chief Justice Simmons, delivering the opinion of the court, reversed the trial judge for refusing a new trial, although there was an attempted poll of the jury, upon the ground that the question was not propounded to the jurors individually and separately. See also *Black* v. *Thornton*, 31 *Ga.* 641; *Campbell* v. *Murray*, 62 *Ga.* 86. There is no statute in this State providing for the polling of the jury after verdict. But upon reason and principle, inasmuch as this court has held that it is a right of the defendant in a criminal case, and inasmuch as in this State the State is not permitted to make a motion for a new trial, or to try a second time one who has been found not guilty, it may follow that the State has no right to poll. Be this as it may, even if the strong statements of the right of the accused to poll the jury do not bring the

case within the maxim expressio unius est exclusio alterius, the expression of the one is the exclusion of another, there is to my mind a paramount reason why a judge should not be permitted on his own motion to poll a jury. In 1850 the General Assembly of Georgia saw fit in its wisdom to pass what is known as the "dumb act," which is now embodied in section 1058 of the Penal Code. This Georgia law declares: "It is error for the judge of the superior court, in any case, during its progress, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the guilt of the accused; and a violation of the provisions of this section shall be held by the Supreme Court to be error, and the decision in such case reversed, and a new trial granted, with such directions as the Supreme Court may lawfully give." Whatever may be the rule in other jurisdictions, our code section is designed to absolutely prohibit any interference in the determination of any issue dependent upon the facts of the case. After a most careful, though not an absolutely exhaustive, examination of Georgia cases I am unable to find one where a judge ever attempted of his own motion to erase a verdict regularly returned in proper form by a jury upon the only issue submitted, and directed a reconsideration of the case by the jury. There are numbers of cases where the jury adopted the wrong form for the verdict, but where their intention was manifest, and the judge, after inquiring of their intention, very properly ordered the verdict corrected in accordance with the wishes of the jury. However, in a criminal case there is but one issue, the guilt or innocence of the accused of the offense with which he is charged. There is nothing in the question of the Court of Appeals to indicate that the jury had been tampered with, or that the evidence was such as demanded a verdict of guilty, or any other reason suggested by the question which called for intervention of the court in order that justice might not be defeated, so as to permit him to poll the jury. I know of no more effective way in which the judge's opinion of the evidence in a criminal case can be intimated than to permit the judge upon his own motion, upon the return of a verdict so regular in form that it can not mean but one thing (either guilty or not guilty), to cause the jury to be polled. That the judge should assume the right of a party in the cause to thus inquire into the verdict ap-

prises every juror of the fact that the judge is not satisfied with their verdict. It matters not what he may say or leave unsaid. Every juror of ordinary intelligence knows that juries are polled by the defendant in a criminal case, or by either party in a civil case only by the dissatisfied party. The order of the court to poll the jury upon the court's own motion is not only an intimation that the judge is dissatisfied, but there is so strong an implication of his dissatisfaction that it amounts almost to an expression of that opinion. It may be said that no juror would change his opinion by reason of the poll or because the judge ordered the polling of the jury; but this argument can not be supported, for it has sometimes, even if infrequently, happened that upon a poll of the jury demanded by one of the parties it has been discovered that the jury was not unanimous. Whether in fact a jury may be influenced by the intimation of the judge's opinion to which I have referred, such at least is the theory of our law; for it could just as well be said that it was useless to pass the "dumb act" and prohibit the judge from intimating an opinion upon the evidence, because the jurors would not be influenced by any such intimation after they had been sworn to try the case according to their opinion of the evidence and had been charged that they were the exclusive judges of the testimony. If a judge can in any case in effect reform a verdict "returned and published," so as to transform a first verdict of not guilty, upon reconsideration of the jury upon being polled, into a verdict of guilty, the judge can in another instance, according to his sense of justice, by polling the jury, with the result that even one man, through fear that he has erred because his judgment is contrary to that of the court, and therefore may now disagree, can transform a verdict of guilty into one of not guilty. I am not saying now that justice in criminal cases might not be as well attained by such indirect direction of verdicts by the judge as by submitting the facts to the jury; but what I do say is that under the Georgia system of jurisprudence verdicts, whether right or wrong, are to be returned by the jury and not by the courts, and that any interference with the prerogative of the jury, anything which tends to hamper their absolute independence of action, any respect for the high character and learning of the judge which may tend to overawe or abash or change the opinion of a single juror, is viola-

tive of the spirit as well as the letter of our law. None of the decisions cited in the opinion of the majority in any way support the proposition that the judge has the right to poll a jury. In the little larceny case in the Glamorganshire district court in England, decided in 1853, a verdict of not guilty was corrected of his own motion by one of the jurors, and the court thereupon had the judgment correctly entered by the clerk. The judge did not undertake to poll the jury; the jurors themselves called the attention of the court to the fact that the clerk had entered the verdict differently from the way in which it was announced by the foreman, or that the foreman had given the verdict incorrectly to the clerk, and thereupon, upon the complaint of the jurors upon their own motion, the verdict was correctly entered. From the report of this case, as set out in the opinion of the majority, it appears that in England such mistakes are likely to occur because the jury are not trusted to write their own verdicts. In this State I am happy to be able to say that the jurors write their own verdicts, and though occasionally they must be corrected, no correction can be made that is not within the line of the finding that is announced when the verdict is received and published. In the Florida case to which reference is made there is no reference whatever to any right of the court to poll a jury. The jury in that case was not polled. It was not held that the judge has the right to poll the jury at any time or under any circumstances. The first headnote in the case of Grant *v.* State, as set forth in 23 L. R. A. 723, is: "Before a verdict returned by a jury in cases of felony is complete it must be accepted by the court for record. At any time after the verdict is returned into the court, and before it is accepted by the court for record, the *accused* has the right to have the jury polled in order to ascertain if the verdict offered is unanimous, and in the absence of a polling of the jury any member thereof has the right sua sponte to recede from the verdict agreed upon at any time before it is accepted for record." The court in that case did not attempt to poll the jury, but he merely held that the verdict first returned was not in such form as that the court could receive it. That is all there is upon that point of the case. This would be good practice in Georgia. If in the present case, assuming that the defendant was accused of burglary, the jury had returned a verdict of guilty of receiv-

ing stolen goods, the court would necessarily have had to return the case to the jury for further consideration and a verdict of guilty or. not guilty of burglary, because the offense of receiving stolen goods would not have been any more authorized under an indictment for burglary than would a verdict finding the accused guilty of carrying a pistol concealed. But in the case at bar, as stated in the question of the Court of Appeals, the verdict "received and published" was a verdict of not guilty. There could be no misunderstanding of the meaning of that verdict. It was within the issues submitted to the jury,—an issue which could only be determined in one of two ways, by a finding of guilty or not guilty. So I can not concur in the statement in the opinion of the majority that "another case in which the question was elaborately considered was Grant v. State, 33 Fla. 291" (supra). In *Cooper's* case, 103 *Ga.* 63, 65, cited by the majority of the court, the question whether a judge on his own motion can poll a jury is not even referred to. In support of the ruling that a judge can poll a jury the majority cite the cases. of *Cook* v. *State,* 26 *Ga.* 593, and *Mangham* v. *State,* 87 *Ga.* 549, 552. In neither of these cases is there any reference to the right of the court to poll a jury. In the *Cook* case, in which the defendant was charged with concealing and employing a negro to the injury of the owner, the verdict as first returned was in these words: "We, the jury, find the defendant. guilty of concealing and employing." The solicitor-general moved to amend this verdict by adding to it the words "the negro to the injury of the owner." "The court, on the jurors all answering that this was what they. intended, allowed the amendment to be made." This court held (headnote 5): "The court may require an incomplete .verdict to be made complete, before receiving it." It is plain to my mind that the ruling of this court in that case will not support the right of a judge to poll a jury. Nor will it support the right of the court to amend a verdict of not guilty into a verdict of guilty, whether directly or indirectly. The verdict to which the question of the Court of Appeals relates is not "an incomplete verdict." It can not be made more complete than its statement. The right of the court to perfect a verdict in accordance with the intention of the jury is well recognized, but it can not be exercised except to perfect the verdict as returned. This power can not be used to ef-

fect the substitution of an entirely different verdict from that bespoken by the jury at the time their verdict was "received and published." To show the view of this court in the *Cook* case, supra, Mr. Justice Benning, delivering the opinion of the court, says nothing more than this in the fifth division of the opinion. "We see nothing wrong here. If the verdict was not full when returned, it was the duty of the court not to receive it, but to require it to be made full. And the court here did no more than this. The amending was, really, the act of the jury, not of the court. Indeed, we incline to think that all that was expressed in the verdict after the amendment was implied in it before the amendment." In *Mangham* v. *State,* supra, the trial judge was affirmed for refusing to receive a verdict of guilty of receiving stolen goods, and in directing the jury that they would have to find a verdict of guilty or not guilty; but the judge did not attempt to poll the jury. The case is not in point, because the court was there dealing only with the question whether the verdict of the jury first returned, and which found the defendant guilty of receiving stolen goods, could be had under an indictment upon which the accused was being tried. This court, very properly I think, held that the defendant could not be convicted of receiving stolen goods under the indictment before the court, any more than he could have been convicted of digging ginseng untimely; and for that reason the court very properly returned the jury to their room to make a decision of some kind (without any intimation of any kind upon the part of the court) confined to the issue raised upon the plea to the particular indictment. In the case to which the question of the Court of Appeals relates there was a conclusive finding in the verdict set aside by the court, upon the only issue involved in the indictment and before the court.