A92A0806. PERRYMAN v. ROSENBAUM et al.
(423 SE2d 673)

Birdsong, Presiding Judge.

This is an interlocutory review of the trial court's order denying appellant/plaintiff's motion to strike certain sworn statements of jurors and granting appellees/defendants' motion for new trial in part as to an award of compensatory damages.

During medical malpractice litigation arising from the death of Rebecca Perryman, appellant settled with certain co-defendants for $500,000. As a result, the trial court pertinently charged the jury as follows: "If you find . . . plaintiff is entitled to recover compensatory damages in this case, *you should determine* the total amount of compensatory damages due plaintiff *and deduct* from that amount the five hundred thousand dollars previously received by plaintiff from [the stated former co-defendants] in determining the amount of compensatory damages against [appellee/defendants]. . . . By compensatory damages, the court means damages awarded for the pain and suffering of Rebecca A. Perryman and damages awarded for the full value of the life of Rebecca A. Perryman." (Emphasis supplied.) Appellees tendered no objection or exception to this particular charge, or to the trial court's instructions to the jury to record their verdict in writing on the verdict form provided. Subsequently, the jury inquired whether they could award exemplary damages without awarding compensatory damages. A recharge was given in answer to this question; the pertinent portion of this recharge states: "Before you could award any exemplary damages, you would have to award compensatory damages for the pain and suffering, or the alleged pain and suffering of Rebecca Perryman. Now, in this particular case you have been instructed that if you determine that the plaintiff is entitled to compensatory damages, *you must then deduct* from whatever amount you determine plaintiff is entitled to, the five hundred thousand dollars previously paid to the plaintiff by some other defendants who were in this case initially. So if you determine that the plaintiff is entitled to compensatory damages for the pain and suffering of Rebecca Perryman, *and after deducting* the five hundred thousand dollars, come up with a net award of zero, that would still be an award of compensatory damages insofar as it is necessary to award exemplary damages.

If that doesn't answer your question, then put whatever other question, or questions you have in writing, and we will try again." (Emphasis supplied.) Although appellees posed a timely exception to the recharge, it was on a specific ground not here at issue and was not on the grounds that the recharge was confusing, ambiguous, or otherwise misleading. The jury thereafter posed no further questions concerning instructions to the court. Subsequently, a verdict in the following form was returned. "We, the jury, find for the plaintiff and against the defendants in the amount of $500,000 in compensatory damages, and in the amount of $85,000 in exemplary damages. . . . We, the jury, find that Dr. Rosenbaum was negligent. We, the jury, find that Nina Hill was not negligent and Dr. Rosenbaum is not liable for her negligence." Appellees' counsel, after being given the opportunity to examine the form of the verdict and to tender any objections thereto, stated: "Yes sir, it appears to be in proper form," and posed no objection. Notwithstanding the amount of the verdict, appellees elected not to poll the jury and acquiesced in the excusal of the jury. The verdict was filed with the clerk; judgment was entered the same day.

After the jurors had been excused, it became apparent to appellees upon talking with certain jurors that a mistake in the verdict may have occurred. Thereafter, contemporaneous with the tender of an amended motion for new trial, appellees tendered the sworn statements of 11 of the 12 jurors (the 12th juror on advice received from some source apparently elected not to tender a sworn statement but indicated she would talk to the court) stating that they had mistakenly believed the court would subtract the sum of $500,000 from the like award of compensatory damages, and that after deducting the $500,000 settlement the verdict should have reflected "$0" compensatory damages. *Held*:

1. The standard of review in this case is whether the trial court abused its discretion in denying appellant's motion to strike the affidavits and in granting a new trial on the issue of compensatory damages. Compare OCGA § 5-5-50 with § 51-12-12; see *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 739 (4) (320 SE2d 863). For reasons hereinafter discussed, we find that an abuse of discretion did occur.

2. OCGA § 9-10-9 provides: "The affidavits of jurors may be taken to sustain but not to impeach their verdict." This statute follows a time-tested general rule necessary for the preservation of the integrity of the judicial system and for the protection of jurors.

(a) In 1886, Justice Hall opined "[j]urors cannot impeach their verdict, and affidavits by members of the jury or of counsel as to their sayings after dispersing, cannot be received for that purpose." *Nelling v. Indus. Mfg. Co.*, 78 Ga. 260 (1). Although it is now settled law that a juror's affidavit will be allowed to explain a verdict in an attempt to

sustain the same, nothing coming from the juror, either directly or indirectly, with respect to the manner in which a verdict was arrived at, will be heard to impeach the same. *Bowman v. Bowman*, 230 Ga. 395, 397 (2) (197 SE2d 372). "That the verdict was caused by *mistake*, or a misunderstanding of the evidence, as disclosed by a member of the jury, will not be heard." (Emphasis supplied.) Id.; accord *Bickford v. Bickford*, 228 Ga. 353, 358-359 (3e, f) (185 SE2d 756).

And, "[a]fter a verdict has been received and the jury have dispersed, a juror will never be heard to say that he did not agree to the verdict." *Sims v. Sims*, 113 Ga. 1083 (1) (39 SE 435). Appellees' assertion that the affidavits in question are not impeaching in nature is without merit. An affidavit is impeaching in nature whether its effect is to attack directly or merely to undermine indirectly the legitimacy of a verdict. These affidavits attempt to establish a *mistake* as to the meaning of the court's instructions and have been tendered for the ultimate purpose of *impeaching* the $500,000 compensatory damage award. Compare *Bowman*, supra, and *Bickford*, supra.

(b) A trial court " 'has no legal power to receive or hear affidavits of jurors to impeach their verdict.' " *Reece v. State*, 208 Ga. 690, 691 (1) (69 SE2d 92); compare *Fidelity Nat. Bank v. Kneller*, 194 Ga. App. 55, 59 (1) (390 SE2d 55) (affidavits of five jurors not allowed to show another juror's bias and failure to communicate that information when queried on voir dire); *Hilliard v. Arnold*, 147 Ga. 15 (1) (92 SE 531). "In passing upon a motion for new trial, the trial judge has no power to receive, hear, or consider affidavits of jurors submitted for the purpose of impeaching their verdict, though submitted without objection." *Wellbeloved v. Wellbeloved*, 209 Ga. 709, 711 (4) (75 SE2d 424); see *Bowman*, supra at 397 (2); *Swift v. S. S. Kresge Co.*, 159 Ga. App. 571 (1) (284 SE2d 74). The order of the trial court unequivocally reflects on its face that the trial court considered the jurors' affidavits, and that "the import of their sworn statements is clear: the verdict they returned is not the verdict they thought they were returning." In view of the above precedent, we find the trial court abused its discretion in receiving and considering the affidavits of the 11 jurors, which in effect impeached their verdict on the grounds of a mistake as to whether the jury or the court would subtract the $500,000 from any compensatory damage award.

3. Appellees, however, relying on *Spencer v. State*, 260 Ga. 640, 643 (3) (398 SE2d 179), argue that goals protected by the provisions of OCGA § 9-10-9 are not absolute and that the statute cannot be applied in such an unfair manner as to deny due process. *Spencer* is a criminal case, and although it was interpreting OCGA § 17-9-41, which is identical to OCGA § 9-10-9, we recognize that the necessity for protection of jurors from harassment or other unlawful inducement, the need for certainty of verdicts, the need to foster open jury

discussion, and the need to insulate jury value judgments from judicial review, will be compelled to yield in certain very limited occasions where human life or liberty sways in the balance. But such compelling personal interests of life and liberty rarely are at issue in civil litigation and are not so at issue in this case. Nevertheless, assuming the dictates of OCGA § 9-10-9 are no longer to be applied in bright-line fashion, we are satisfied that this is not a case meriting departure from a rule that has ably assisted in protecting the integrity of our jury system for more than a century.

In entering its order the trial court relied upon the precedent of *Setzer v. Latimer*, 40 Ga. App. 247 (149 SE 281). *Setzer*, a case decided in 1929, is an anomaly, as expressly reflected on the face of the decision, as follows: "While we entertain no doubt of the justness and correctness of the judgment herein rendered by this court, *we do not wish to relax the general rule that jurors can not impeach their own verdict,* and therefore deem it not amiss to say that *the judgment here rendered is based on the particular facts of this case,* taking into consideration the irregularity in the form of the verdict, the ambiguity of the question and the answer which constituted the verdict, the pleadings in the case, the affidavit of *all* the jurors who tried the case, and the evidence, which amply supports the finding which they all swear they made." (Last emphasis only in original text.) Id. at 250-251. *In this case, the form of the verdict is clear, unambiguous, and regular on its face.* However, assuming the form of the verdict was, under the circumstances of this case, improper, irregular or incomplete, it remained incumbent upon appellees to object timely thereto, otherwise any such deficiency was waived. *West Ga. Pulpwood &c. Co. v. Stephens,* 128 Ga. App. 864, 870 (3) (198 SE2d 420). As appellees cannot now directly attack the regularity of the form of the verdict, they cannot indirectly attack that form in an attempt to meet the criteria of *Setzer*, because of the general rule of law that "one cannot do indirectly that which the law does not allow to be done directly." *Richmond County v. McElmurray,* 223 Ga. 440, 443 (1) (156 SE2d 53). *We further find the charges of the trial court, regarding the deduction by the jury of the amount of $500,000 from any award of compensatory damages to have been clear and unambiguous on their face.* Likewise, appellee cannot now, in an attempt to meet the *Setzer* criteria, indirectly attack those charges (*Richmond County,* supra), as having been confusing or misleading to the jury, when he failed to take timely exception to the charges on these specific grounds at trial (see generally *Sims v. Johnson,* 185 Ga. App. 720 (365 SE2d 532)). Additionally, we note that one of the jurors in this case, unlike *Setzer*, did not supply a sworn statement; while this difference may not seem significant, we are mindful of the fact that if eleven affidavits per se will create an exception, why not ten, and if

ten will suffice, why not nine ad infinitum (until no verdict will be safe from attack by post-verdict affidavits). However, even if all the jurors' statements had been obtained in this case, such factor would not be controlling for reasons which will hereafter become apparent. Thus, in view of the clear pronouncement in *Setzer* that the opinion was strictly based on all of the specific facts therein enumerated, we find that the case at bar is distinguishable in significant respects, and that *Setzer*, supra, is not controlling.

Rather we find controlling the 1966 holding by this court in *Saint v. Ryan*, 114 Ga. App. 489 (3) (151 SE2d 826). In *Saint* the verdict was as follows: " 'We the jury, find in favor of the plaintiff in the amount of $3000' " (id.); however, the jury mistakenly failed to deduct $2,000 from the verdict as instructed. *Saint* is directly on point with the case at bar, except that in *Saint* the jury had been instructed to reduce damages only by $2,000, rather than by $500,000, and the fact that all 12 jurors had filed affidavits attesting to their mistake, rather than only 11 as in this case. In affirming the judgment the *Saint* court opined: " 'The affidavits of jurors may be taken to sustain but not to impeach their verdict.' [Cit.] The instruction to the jury as to deducting the $2,000 was clear and unambiguous. The verdict is clear and unambiguous and is not subject to explanation by the jurors." Id. at 490 (3). Moreover, *Saint* expressly acknowledges *Setzer*, supra, and declines to follow it, thereby tacitly finding *Setzer* substantially distinguishable even though in both cases all 12 jurors had filed affidavits attesting to their mistake. The trial court recognized that *Saint*, supra, would require a different result than he reached; however, he chose to apply *Setzer* and distinguish *Saint*. In doing so, the only reason articulated by the trial court for not following *Saint* is that the latter case "involved a $2,000 rather than a $500,000 mistake." As appealing as it may be to correct an alleged jury mistake, we cannot base the law on distinctions based on the amounts of the verdicts. Moreover, as recognized as early as 1850 in *Bishop v. State*, 9 Ga. 121, 127, if we alter and relax the rule to accommodate appellees, no verdict will be safe from subsequent attack. Where would we draw the line? How many jurors must attest to the mistake before it warrants correction; how many dollars must be involved before this court will be swayed to set aside a verdict that is unambiguous on its face? Yet, it is this very type of uncertain precedent which appellees urge this court to adopt in their attempt to prevent the reversal of the trial court's order. We cannot succumb to this siren's call. It has long been recognized that "the appellate process affords us no latitude to make adjustments for the ill-earned good fortune of the lucky or the heart-rending misfortune of the unlucky." *Autry v. State*, 150 Ga. App. 584, 587 (258 SE2d 268). The trial court further abused its discretion by failing to follow the controlling precedent of *Saint*, supra.

Ga. Const. of 1983, Art. VI, Sec. V, Par. III; OCGA § 9-11-60 (h).

Further, the trial court cannot render its ruling viable merely by asserting the authority to grant a motion for new trial as to compensatory damages under the provisions of OCGA § 51-12-12. Under OCGA § 51-12-12 (b), only if the jury's award is clearly so inadequate or so excessive as to any party to be inconsistent with the preponderance of the evidence, may the trial court order a new trial as to damages only. Nothing in the trial court's order reflects that the trial court in fact based its ruling on such a finding. To the contrary, the order conclusively establishes that the grant of the new trial was inextricably and improperly based on the jurors' affidavits, asserting a $500,000 mistake in the judgment rendered. Accordingly, we find the trial court's order erroneous for all the reasons above discussed. Moreover, only the charge and verdict portions of the trial transcript were forwarded by the parties for appellate review. Accordingly, we must decline to speculate whether the record would have supported a grant of new trial as to compensatory damages based, as required by statute, on a finding that the jury's award of $500,000 was clearly so excessive as to be inconsistent with the preponderance of the evidence in this case. OCGA § 51-12-12 (b).

4. Finally, we are compelled to observe that the appellees' brief repeatedly and forcefully urges that we take into account and primarily be guided by the magnitude of the jury's alleged mistake. We would, therefore, be remiss not to address this issue further. Assuming a $500,000 mistake occurred, as asserted, it was aided unequivocally by the trial strategy and conduct of the appellees. At no time did they timely object on grounds of lack of clarity to the now questioned instructions or request that additional clarifying instructions be given. At no time did they object to the verdict form given to the jury, and in fact even after the verdict was announced, appellees assented to the correctness of the form of the verdict without question. Moreover, the record does not reveal appellees attempted to have the court utilize a form for the verdict tailored to address the issue of settlement subtraction in the event compensatory damages were awarded. Even after examining the verdict, appellees' counsel expressly stated on the record that the verdict "appears to be in proper form." Further, notwithstanding the $500,000 compensatory damage award contained within the verdict, appellees elected not to request a poll of the jury by the trial court in an attempt to ascertain the *intendment* of the jury's verdict (OCGA § 9-12-7; *Ballard v. Turner*, 147 Ga. App. 584, 586 (3) (249 SE2d 637); compare *McGahee v. Samuels*, 61 Ga. App. 773 (7 SE2d 611)) and did not object to the jury's immediate excusal thereafter. Viewed in the totality, appellees' trial procedure and conduct aided in allowing the dispersal of the jury before the alleged mistake could be detected and corrected, if not aid-

ing at least indirectly in the jury's accomplishment of the mistake itself. One cannot complain of a verdict, judgment, order, or ruling that his own trial procedure or conduct aided in causing. *West v. Nodvin*, 196 Ga. App. 825, 829 (3e) (397 SE2d 567).

The order of the trial court granting appellees' motion for new trial as to compensatory damages is reversed.

*Judgment reversed. Sognier, C. J., McMurray, P. J., Carley, P. J., Andrews and Johnson, JJ., concur. Pope and Cooper, JJ., concur specially. Beasley, J., dissents.*

POPE, Judge, concurring specially.

While I share the majority's concern about preserving the rule against the impeachment of verdicts, I agree with the dissent that the sworn statements of the jurors in this case were submitted to explain and *sustain* their verdict in this case. As our Supreme Court recently stated in *Spencer v. State*, 260 Ga. 640, 643 (398 SE2d 179) (1990), cert. denied, ___ U. S. ___ (111 SC 2276, 114 LE2d 727) (1991) "[t]he rule against allowing jurors to impeach their verdict serves important public interests. The rule discourages post-verdict harassment of jurors, enhances verdict finality and certainty, encourages free and open discussion among jurors during deliberations, and insulates jury value judgments from judicial review." However, these interests are not harmed when sworn statements or affidavits of jurors are submitted to explain the true meaning of their verdict rather than counter it in any way. See *Watkins v. State*, 237 Ga. 678 (229 SE2d 465) (1976). By refusing to allow jurors to assist the trial court in determining the true meaning of their verdict, we have applied the dictates of OCGA § 9-10-9 too broadly. For that reason, our decisions in *King Cotton, Ltd. v. Powers*, 190 Ga. App. 845 (380 SE2d 481) (1989) and *Saint v. Ryan*, 114 Ga. App. 489 (151 SE2d 826) (1966) should be disapproved to the extent they hold that sworn statements of jurors offered to explain their verdict run afoul of the dictates of OCGA § 9-10-9.

I agree with the majority that the error committed by the jury in rendering its verdict was aided, if not caused, by the apparent trial strategy and conduct of the defendants. At a minimum, defendants should have requested that the jury be polled after their verdict was returned. Contrary to the dissent's assertion otherwise, polling the jury would have quickly and easily resolved this misunderstanding. The trial judge could have asked the jury if they followed his instructions and deducted the $500,000 settlement from the total amount of compensatory damages they found plaintiff was entitled to receive. As the majority points out, the defendants did not offer a proposed form for the verdict that would have clarified the jury's responsibility regarding deducting the earlier settlement with the other co-defendants from the total amount of damages they determined were due to plain-

tiff. Under the facts of this case, I agree that the trial court erred by granting defendants' motion for new trial as to compensatory damages.

I am authorized to state that Judge Cooper joins in this special concurrence.

BEASLEY, Judge, dissenting.

A jury is unlettered in legal procedure. It has only its common sense, collective experience, the evidence and argument presented to it, and the court's charge to guide it in discharging its duty.

In this case involving multiple defendants, the jury was asked to consider the separate negligence vel non of two individuals and, if there was negligence, two separate types of damage. The second type was dependent on the first, and the jury was informed that, with respect to the first, other defendants had already agreed to pay plaintiff a half million dollars. The jury was told how to calculate in this fact, and it was clear to counsel and the court. It was clear to the jury as well. It was also clear to counsel and the court what the jury was to record on the verdict form, but they misunderstood the jury's message.

When the jury verdict is read in conjunction with the court's charge, it is consistent with the jurors' explanation of their written communication: the jury found that plaintiff was entitled to compensatory damages of $500,000 which the jury knew was already forthcoming from the other defendants. Since they had to show that compensatory damages were awarded, in order to support their award of exemplary damages, they indicated this finding. They had been instructed, after expressly asking, that exemplary damages could not be awarded if they found no compensatory damages. Thus, if they had indicated "0" in compensatory damages, the exemplary damages would have been unauthorized. If they had indicated less than $500,000 as compensatory damages, they thought their award of exemplary damages would be reduced by the difference.

A jury poll would not have uncovered this explanation, as the jurors would have answered "yes" to the questions posed. Their sworn statements, taken in deposition form, do not impeach the verdict but rather explain and sustain it, so they are not counter to the rule contained in OCGA § 9-10-9 but rather conform to it. *Setzer v. Latimer*, 40 Ga. App. 247 (149 SE 281) (1929); *Fidelity Nat. Bank v. Kneller*, 194 Ga. App. 55, 59 (390 SE2d 55) (1989). The eleven jurors who gave statements unanimously and independently stated that plaintiff was to receive zero from Dr. Rosenbaum in compensatory damages. Eleven citizens (the twelfth juror preferred to talk directly to the court, which apparently was deemed unnecessary) who worked long and hard on this case agreed that plaintiff was entitled to a *total* of

$500,000 in compensatory damages and that is what they wrote in their verdict. They knew that he had already been assured that amount from co-defendants, which was not reflected in any verdict. Their explanation of the meaning of the "$500,000" on the verdict form is entirely harmonious with what they had been told about plaintiff's recovery and the instructions of the court. By returning the exact amount of the previous settlement, they indicated the gross amount of the compensatory damages, inferring that the net amount was to be zero.

The sworn statements of the jurors in this case do not seek to undermine the deliberative process or the integrity of the jury or its work. Consideration of them does not deserve the "important public interests" served by the rule against the *impeachment* of verdicts, as listed in *Spencer v. State*, 260 Ga. 640, 643 (3) (398 SE2d 179) (1990). The jurors merely clarify their verdict, as the trial court recognized.

*Saint v. Ryan*, 114 Ga. App. 489 (3) (151 SE2d 826) (1966), is not controlling to the extent that it held that the verdict could not be amended to reflect substantive correction. Here the verdict was not amended; it was explained and, the judgment having been partially nonconforming (see OCGA § 9-12-9), a new and limited trial was granted. The court deemed the compensatory part of the verdict illegal because, as originally construed, it recorded gross rather than net compensation and left extant the legal parts, i.e., the findings as to negligence and the exemplary damages. This it was permitted to do. OCGA § 9-12-8. *Saint* also differs because the complicating factor of exemplary damages was not present in that case, so the jury was not prompted to show compensatory damages in order to provide the prerequisite for the exemplary damages. The jury in *Saint* was simply and unequivocally told to deduct $2,000 from any amount they found plaintiff entitled to; in this case, the jury was told it needed to find compensatory damages in order to award exemplary damages, and it did so by finding that the amount previously agreed to be paid plaintiff fully compensated plaintiff. In *Saint* there was no reason not to deduct the $2,000 and so reflect on the verdict form; here there was good reason, i.e., the necessity to show the compensatory damages to support exemplary damages.

There was error in the lack of clarity, from the jury's perspective, in the court's instructions, which carried through to the written recordation of the verdict and so into the judgment which reflected the court's misconstruction of the true verdict. There was not error in the court's rectification of the same by the grant of a new trial on the issue of compensatory damages, the court apparently having concluded that the change would have been one of substance and not of form so that the verdict could not be amended under the authority of OCGA § 9-12-7.

Near the end of the court's long charge, the court instructed the jury on compensatory and punitive damages and stated, just before it discussed the verdict form: "I further charge you that if you find that the plaintiff is entitled to recover punitive damages, you should not deduct anything from that [compensatory] amount." With respect to the verdict form, it instructed in part: "If you determine from a preponderance of the evidence that the plaintiff is entitled to recover from the defendants in this case, then you would mark that choice and fill in the blank the amount of compensatory damages for which you find the plaintiff is entitled to recover. . . . If you find that the plaintiff is entitled to recover against the defendants and determine the amount of compensatory damages, you must then determine whether or not you find that the plaintiff is also entitled to recover exemplary damages."

Earlier the court had instructed the jury to determine the "total" amount plaintiff was entitled to, which it did in its deliberations and recorded on the verdict form. The court did not make clear that the net, not the gross, was to be recorded. The form did not ask for recordation of the net amount to be awarded; it simply asked for the amount of compensatory damages "against the Defendants." In order for exemplary damages to be authorized, the jury had to show that it was awarding the $500,000 compensatory damages and it did so, recognizing from what it was told that this would in the end net to zero because of the settlement with the other parties. Had it shown "zero" compensatory damages, the prerequisite for exemplary damages would have been missing, and the verdict would be void on its face.

Insofar as there being no objections by defendant to the charge, the recharge, or the verdict form on this point, that should not be controlling because these matters were not objectionable. There simply was a conveyance of an idea as to what to write on the verdict form which was understood by the jury in one way and to counsel and the court in another way, and it did not become evident until after the trial.

The trial court was prompted to reflect on the verdict by the motion for new trial and, by expressly invoking OCGA § 51-12-12 as amended in 1987, concluded that its construction of the verdict so as to award an *additional* $500,000 would constitute excessive compensatory damages inconsistent with the preponderance of the evidence in the case. It specifically utilized the remedy provided by subsection (b) of that Code section. If this basis was wrong and the court was not authorized to conclude that recovery of one million dollars was excessive, then OCGA § 5-5-50 controls. See OCGA § 51-12-12 (c).

We are not authorized under OCGA § 5-5-50 to disturb the presiding judge's first grant of a new trial because appellant has not shown an abuse of discretion or that the verdict of $500,000 compen-

satory damages, as the verdict was construed in the judgment, was *required*. There is evidence in the trial and in connection with the motion to support the movant, and a verdict of $500,000 on top of the $500,000 settlement is not demanded for plaintiff. See *Winn Dixie Stores v. Whaley*, 127 Ga. App. 381, 382 (1) (193 SE2d 279) (1972); *Wellbeloved v. Wellbeloved*, 209 Ga. 709, 710 (1) (75 SE2d 424) (1953). The trial court has the power to correct errors and grant new trials, OCGA § 5-5-1 (a), and it may do so under OCGA § 5-5-20 "when the verdict . . . is found contrary to evidence and the principles of justice and equity." See also OCGA § 5-5-21. These are addressed to the sound legal discretion of the trial judge. *Kendrick v. Kendrick*, 218 Ga. 460 (1) (128 SE2d 496) (1962). The court obviously concluded that as originally construed, the verdict fell into that category. I cannot agree that it was contrary to the "law . . . usages and customs of courts," in the words of OCGA § 5-5-1 (a), for the court to exercise this power when all the evidence shows that the jury's verdict was misconstrued and an injustice will otherwise result. A "verdict is a 'true saying' . . . [A] verdict delivered into court by a jury, which does not comport with the findings of that jury, is not a true saying. It would not speak the truth as the jury found it. The jury's oath is to give a 'true verdict.' A verdict declaring contrary to the findings of the jury is not a true verdict. To hold otherwise would be to treat a solemn legal investigation as a game where victory may be won by inadvertence and methods that are worse." *Groves v. State*, 162 Ga. 161, 162 (132 SE 769) (1926).

DECIDED SEPTEMBER 9, 1992 —
RECONSIDERATION DENIED OCTOBER 13, 1992 —

*Orr & Edwards, W. Fred Orr II, James G. Edwards II*, for appellant.

*Allen & Peters, Hunter S. Allen, Jr., Bradley C. Reeves, Gary R. McCain*, for appellees.