## 49709. STONE v. THE STATE.

EBERHARDT, Presiding Judge.

James Wilbur Stone was arrested by an officer of the State Patrol, after being chased for some distance on a highway, and charged with the offenses of driving under the influence and speeding. He was indicted separately for the offenses, and they were consolidated for trial, which resulted in a verdict of not guilty of speeding, and guilty of driving under the influence.

Trooper Christian, who made the arrest, testified that he observed the defendant operating an automobile on the highway at a high rate of speed, that he was weaving across the center line of the road, and that he followed the defendant to his home where he talked with the defendant and that the defendant had a slur in his speech as if by a thick tongue, that he walked unsteadily and had the smell of alcohol on his breath. The defendant lived in a house trailer, and after being arrested, broke away, ran into the trailer and locked the door. The trooper then called to the sheriff for assistance in completing the arrest. A deputy sheriff from Telfair County and the sheriff of Jeff Davis County arrived within about fifteen minutes, effected the arrest and removal of defendant from the trailer, and took him to the police station at Hazlehurst.

The defendant elected to be sworn as a witness, testified, and asserted that he had drunk about a pint of whiskey while in the trailer, but that he had not previously had anything to drink; that he was carried to the police station at Hazlehurst about 11:15 p.m. where "there was a machine that you blow in to see if you have been drinking," and that he demanded a blood test but

was not given one. Asked why he made such a demand, he replied: "Well, because I'd been drinking. I just drank a pint of whiskey at my house waiting on the sheriff to get there . . . they was locking me up because they said I was drunk and I wasn't too sure that a pint of whiskey could make me drunk." And again he was asked: "Why did you want this blood test?" and he answered, "To see if I was drunk." Q. "Why did you want to know if you were drunk?" A. "Well, I figured if I wasn't drunk they wouldn't lock me up."

Trooper Christian testified that the cases were made against defendant at 9:40 p.m. at the police station, and that he did not ask for a blood test, and that he made no request of anybody else in the trooper's presence. The defendant was given an intoximeter test at the police station, but there is no evidence as to the result thereof.

The sheriff testified that the defendant made no request or demand for a blood test but that an intoximeter test was made. No blood test was made.

Defendant appeals from the sentence and judgment on the verdict of guilty of driving under the influence of intoxicants, enumerating as error, (1) the overruling of his motion for new trial, (2) failure of the court to charge, without request, the provisions of Code Ann. § 68-1625.1 (g), (3) instructions of the court to the jury in response to a statement from the foreman that the jury had become confused about the proof as to Highway No. 19, the public road on which it was charged in the indictment that the offense of driving under the influence had been committed. *Held:*

1. The general grounds of the motion for new trial are without merit. *Arnall v. State,* 120 Ga. App. 309 (1) (170 SE2d 337), and citations.

2. There was no request for a charge of Code Ann. § 68-1625.1 (g) providing that one who has been arrested for the offense of driving under the influence may demand a "blood *or* breath test" to determine the amount of weight of alcohol in his blood, and that it is mandatory upon the officers in whose custody he shall have been placed after arrest to "have a blood *or* breath specimen taken for the purpose of determining the amount of alcohol in the person's blood, if the facilities for obtaining

such specimens are available in the county of his confinement, and to have said specimen analyzed," and no such charge was given.

The purpose of the tests provided in this statute is to ascertain the alcoholic content in the blood of the party charged with operating a vehicle on the highway while under the influence of alcohol at the time of the operation of the vehicle or as nearly so as the circumstances will permit. Under the testimony of the defendant here, the demand was not addressed to that purpose. He testified that he had consumed about a pint of whiskey in his trailer home, *after* the chase on the highway and just prior to his final arrest. If that was true there was no possibility of ascertaining the alcoholic content of the defendant's blood by either a blood test or an intoximeter test which would be applicable to the time when he had operated the automobile on the highway. By this testimony the defendant made the results of a blood test meaningless and irrelevant in the context which the statute intends. He testified that he had consumed no alcoholic beverages prior to driving, or while driving the car.

His purpose for seeking a blood test, as he testified, was "to see if I was drunk . . . they was locking me up because they said I was drunk, and I wasn't too sure that a pint of whiskey could make me drunk. . . I figured if I wasn't drunk they wouldn't lock me up." It was not, therefore, for the purpose of ascertaining what the alcoholic content of his blood may have been when he was operating the vehicle on the highway.

While it was testified that an intoximeter test was given, there is no testimony in the record as to what that test may have shown.

There is, however, testimony that the defendant was under the influence of alcohol when he got out of his car and prior to getting into the trailer where he says he drank a pint of whiskey. The trooper testified that when he got out of the car he talked with a slurring speech, a thick tongue, walked unsteadily and that he escaped after being placed under arrest and locked himself in the trailer. He also testified that the defendant had driven the automobile at a high speed, weaving across the center

line of the road, and ran some vehicles off the highway by the manner of his driving. This had occurred in his presence. Although the defendant denied this and asserted that he had drunk no alcoholic beverages prior to driving his car on the highway and reaching his home, it was sufficient to create a factual issue for the jury, which the jury was authorized to resolve against him. *Arnall v. State,* 120 Ga. App. 309 (1), supra.

Under the circumstances here there was no error in failing to charge the provisions of Code Ann. § 68-1625.1 (g). It had become irrelevant, under the defendant's own testimony.

3. (a) After the jury had been out for a considerable time the court inquired of the foreman as to whether they had reached a verdict on either of the charges being tried. The foreman replied that they had reached a verdict on the speeding charge, but not on the DUI charge because the jury had become confused relative to the number of the highway, or the location of Highway 19 on which the indictment charged that the offense had been committed. The court asked whether the jury would like to go out and look at the posted highway signs, carrying the number designations, and whether that would be of help to them. The jury replied in the affirmative, and a thirty-minute recess was declared, during which the jury was permitted to go out and ascertain the location of Highway No. 19, or the number posted on the highway which the jury understood to be the one involved, and which defendant testified ran by his home. "Q. You were on Highway 19 going north, right? A. I was—toward my house trailer. Q. You were going on Georgia Highway 19 and you were traveling north, is that correct? Toward your house? A. After I got off of 341? Is that what you are talking about? A. Georgia 19? A. I'm talking about after I got off of 341."

There was no objection to the allowing of the jury to go and inspect the road signs, and no error enumerated as to that matter. Hence, it is not before us for decision.

(b) It is contended that the judge expressed an opinion in his colloquy with the foreman of the jury, proscribed by Code § 81-1104. In the colloquy the judge asserted: "I'll simply say this, the signs are conspicuously posted, and surely — the court is not commenting on the

evidence — but surely you realize that its perfectly commonplace throughout the State and practically every other state that many times one stretch of road has three or four or five different numbers," after which the recess was declared and the jurors permitted to go out and view the road and posted signs.

There was no objection or motion for a mistrial because of this colloquy. Cf. *Darby v. McNelley,* 103 Ga. App. 570 (2) (120 SE2d 153), and cits; *Pulliam v. State,* 196 Ga. 782 (6, 7) (28 SE2d 139); *Waller v. State,* 213 Ga. 291 (4) (99 SE2d 113); *Sides v. State,* 213 Ga. 482 (2) (99 SE2d 884); *Roberts v. State,* 231 Ga. 395 (1) (202 SE2d 43). The colloquy was not a part of the charge of the court. "A party can not during the trial ignore what he thinks to be an injustice, take his chances on a favorable verdict, and complain later." *Joyner v. State,* 208 Ga. 435 (2) (67 SE2d 221).

While an opinion may have been stated as to the commonplace practice of finding several numbers posted on a single stretch of the highway, that was not as to a material factual issue in the case. Indeed, as we have already noted, the defendant himself had testified that he had driven his car home on Georgia Highway No. 19, after leaving Highway No. 341, and that it went by his trailer home. There was thus *no issue as to that,* and even if the colloquy in which the court addressed the statement to the foreman of the jury be deemed to be a portion of the court's charge, it was relative to a matter which the defendant had admitted, and does not constitute error. *Lastinger v. State,* 58 Ga. App. 369 (198 SE 559); *Davis v. State,* 58 Ga. App. 440 (5) (198 SE 800).

(c)  The court also charged the jury that they should re-examine the grounds of their opinion and see whether it might be possible for them to reach a unanimous verdict, and that they should lay aside all mere pride of opinion and bear in mind that the jury room is no place for espousing and maintaining in a spirit of controversy, either side of a cause; that jurors should not be advocates for either side, but should examine the evidence in the light of instructions from the court and see whether a verdict might be reached.

It is urged that the charge amounted to coercing a

verdict by the court, but we cannot agree. A very similar charge was approved by the Supreme Court in *Ratcliff v. Ratcliff,* 219 Ga. 545 (134 SE2d 605). See also *Spaulding v. State,* 232 Ga. 411, 413 (4) (207 SE2d 43), where a similar charge was held not erroneous.

*Judgment affirmed. Deen and Stolz, JJ., concur.*

SUBMITTED SEPTEMBER 6, 1974 — DECIDED SEPTEMBER 24, 1974.

*J. Laddie Boatright,* for appellant.

*W. Glenn Thomas, Jr., District Attorney, Cletus W. Bergen, II, Stephen E. Curry, Assistant District Attorneys,* for appellee.