## 29894. BRADLEY v. THE STATE.

GUNTER, Justice.

Appellant was convicted of aggravated assault and armed robbery in the Superior Court of Muscogee County and given consecutive sentences of 10 years. He was acquitted of murder. He appeals on the ground that a mistrial should have been granted because of the prejudice to his case caused by a comment of the prosecutor and an unresponsive answer from a witness.

The record shows that on February 11, 1974, the victims, Dorminy and Biggers, were in their apartment when 5 other men arrived to buy some marijuana. After initial socializing, two of the five went into the kitchen and then returned, one carrying a pistol. The victims were forced to the floor, beaten with the pistol and a heavy bottle, and robbed. Biggers subsequently died from head wounds sustained during the beating.

Appellant was tried jointly with two co-defendants, Ingram and Riggins. The state's case was built on the testimony of Dorminy, who identified appellant as the man with the gun, and on confessions from Ingram and Riggins.

Prior to trial, appellant moved for separate trials because he anticipated that the confession of at least one co-defendant would be used. The trial court denied the motion but ruled that a confession could be used only against the maker and that any witness testifying as to a confession would be instructed out of the presence of the jury to delete any reference to any co-defendant. That ruling is not challenged on appeal.

When the confessions were presented, the court's ruling was carefully followed. The confessions plus Dorminy's testimony left no doubt as to the crimes committed, but only Dorminy's testimony directly implicated appellant, who chose not to testify. In this context, appellant argues that a remark of the prosecutor and an answer from a witness were improper, that they tended to implicate him, and that the prejudice to his case could not be cured except by a mistrial.

Both incidents complained of occurred during a protracted hearing (over 130 pages of transcript) on the

voluntariness of Ingram's confession. The issue was first heard out of the presence of the jury. When the jury returned, the detective who took the confession resumed the stand on the same issue. As he began his testimony an objection was made, and the following happened (T-180): "The Court: This evidence, of course, that Mr. Hicks is giving would only apply to the defendant, Ingram, and would not be considered by the jury as evidence in the case of Riggins nor Bradley. Defense Counsel: Thank you, Your Honor. Prosecutor: Your Honor, I would also like to caution the witness not to repeat the names of any other persons — The Court: Other than Harvey King — Prosecutor: On trial. The Court: Remember and observe that instruction."

Appellant then moved for a mistrial on the ground that the remark not to "repeat the names of any other persons . . . on trial" gave the jury a basis for inferring that Ingram had implicated appellant. The motion was made and heard out of the jury's presence. The trial judge stated, "It's a close question," but denied the motion. When the jury returned, he charged: "Ladies and Gentlemen, I want to once again caution you and instruct you thusly: That the evidence that the state is offering through Detective Hicks is evidence that the state contends is applicable only in the case of The State of Georgia against Willie Henry Ingram, and you will consider it for that purpose and in his case only." The detective then continued his testimony, which did not concern the events of the crime but only the circumstances surrounding the confession. After the testimony of intervening witnesses, the detective returned to the stand and testified as to the contents of the confession.

The second incident occurred while one of the intervening witnesses, Ingram's mother, was on the stand. She was present when the confession was given and was called by the defense on the question of voluntariness. As she testified, the following happened (T-235): "Q. Would you go ahead and tell us what transpired after you got in there and Mr. Hicks — well, first of all, what, if anything, was said when you walked into the office? A. Well, I went in and we all sat down in the room, the three of us, and he said, Mrs. Ingram, seems like your son is a victim of

circumstances; he said, I went to your home, I went in quietly, I checked the family out and I know your husband is in ill health and didn't want to upset him, so we just brought Will down here for questioning. And I said, Questioning for what? He says, Well, there has been a murder. I said, Why did you pick him up? He said, We received a telephone call from Nashville, Tennessee earlier this day from Harvey King and he indicated that he was on his way back here to testify in this case and we are waiting for him and he asked me to question William Ingram and *two other suspects that are in this courtroom".* (Emphasis supplied.)

Appellant then moved for a mistrial on the ground that the prosecutor's comment earlier in the trial combined with the reference to the statement of Harvey King caused prejudice to appellant that could not be corrected except by mistrial. The motion was made and heard out of the presence of the jury. The trial court denied the motion. When the jury returned, the court charged: "Ladies and Gentlemen of the jury, in this witness' testifying, she testified that Mr. Hicks made a statement to her relative to parties that have been referred to by a call to Huntsville, Alabama, or Nashville, Tennessee — some other place other than Columbus; and in the course of that, she stated that Mr. Hicks had informed her that her son and two other persons, who she said was on trial here, was mentioned in that phone call. Mr. Hicks had specifically denied making any statement to her, if you will recall, ladies and gentlemen, that he stated that her son nor any other persons were mentioned in the phone call other than Harvey King. So Mr. Hicks has specifically denied that; however, I am instructing you, ladies and gentlemen, to disregard and erase from your minds entirely the statement by this witness, whether you believe Mr. Hicks made it or whether you don't believe Mr. Hicks made it, any reference to any other persons on trial in this case at that time. This entire proceeding that we're conducting at this time and this witness' testifying insofar as the voluntariness of any statement that Defendant Ingram might have given; and any evidence given by this witness, by Detective Hicks or by the Detective Bettis at this time, you will consider only

insofar as it applies to Defendant Ingram. And I instruct you that again, ladies and gentlemen, and the statement that this witness has volunteered, not responsive to a question you will disregard altogether — erase from your minds."

Appellant argues that the remark of the prosecutor made Ingram a witness against him and that he was denied his right to confront the witness, citing Mattox v. United States, 156 U. S. 237 (1895) and Pointer v. Texas, 380 U. S. 400 (1965). Strictly speaking, appellant was not denied his right to confrontation. Neither the detective nor Ingram (through his confession) gave testimony against appellant because all references to appellant were deleted. The jury was repeatedly instructed that the evidence from both the detective and Ingram was relevant only to Ingram's case. After the prosecutor made his remark, it would not have improved appellant's position to have permitted him to cross examine either the detective or Ingram.

Nevertheless, a defendant in a joint trial where a co-defendant's confession is used faces a real predicament, as was recognized by the trial court here and by the United States Supreme Court in Bruton v. United States, 391 U. S. 123, 126 (1968). There, the defendant was tried with a co-conspirator whose confession was used in evidence. The co-conspirator's references to the defendant were not deleted but the jury was instructed that the confession was evidence against the co-conspirator only. The Supreme Court reversed the conviction. The court stated: "We hold that, because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining petitioner's guilt, admission of . . . confession in this joint trial violated petitioner's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment."

Even where, as in the present case, damaging references in the co-conspirator's statement are deleted, a similar risk may arise if the prosecutor informs the jury of the content of the deleted references. That is what appellant claims happened here. Thus there is a substantial question as to whether the prosecutor's

remark was so prejudicial as to require a mistrial.

Appellant reads too much into the prosecutor's remark. When the remark was made, the detective was testifying on the voluntariness of Ingram's confession. In cautioning him "to not repeat the names of any other persons . . . on trial," the prosecutor indicated that either appellant or Riggins might otherwise be mentioned in the detective's testimony, but he did not indicate in what context the name of either might arise. Because the remark made no specific reference to appellant or Riggins and because the issue before the jury at this time was voluntariness, it is highly speculative to suggest that the remark informed the jury that Ingram had implicated appellant. Since it is unlikely that the remark had for the jury the significance that appellant attaches to it, it cannot be said that the trial judge abused his discretion in denying a mistrial and giving a curative instruction. In passing on a motion for mistrial because of an improper statement of a prosecutor, the trial judge may take such action as in his judgment will prevent harm to the defendant; and a new trial will not be granted unless it is clear that such action failed to eliminate the improper statement from consideration of the jury. *Howard v. State,* 229 Ga. 839 (195 SE2d 14) (1972).

Similarly, it cannot be said that appellant was so prejudiced by the statement of Ingram's mother as to require a mistrial. She indicated only that one of the parties to the crime, not on trial, had said appellant should be questioned and that she had heard that from the detective. The detective denied making such a statement to her, and the jury was so instructed. Because the statement came out on questioning by the defense, gave no indication of appellant's role in the crime, and was directly contradicted by the detective, the trial judge did not abuse his discretion in charging the jury to disregard the statement and in denying the mistrial. See *Woods v. State,* 233 Ga. 495 (212 SE2d 322) (1975).

Although the possibility of prejudice in the joint trial situation is obvious, on this record as a whole, it does not appear that appellant was denied a fair trial. It is worth noting that all three defendants were charged with aggravated assault, armed robbery and murder. But

appellant was acquitted of murder and the two co-defendants were acquitted of all charges except the lesser included offense of robbery by intimidation. It is apparent that the trial court was diligent in protecting appellant's right to a fair trial and that the jury was conscientious in applying the court's instructions to the evidence. On the facts of this case, the judgment of the trial court must be affirmed.

*Judgment affirmed. All the Justices concur, except Jordan, Hall and Hill, JJ., who concur in the judgment only.*

SUBMITTED APRIL 24, 1975 — DECIDED JUNE 25, 1975.

*Thomas J. Killeen,* for appellant.
*E. Mullins Whisnant, District Attorney, J. Gray Conger, Assistant District Attorney, Arthur K. Bolton, Attorney General, Kirby G. Atkinson,* for appellee.