## 31074. WATKINS v. THE STATE.

INGRAM, Justice.

Appellant Earnest Watkins prosecutes this appeal from his convictions by a jury of armed robbery and simple battery in Coweta Superior Court. He received concurrent sentences of 20 years for the armed robbery and 12 months for the battery offense. We find harmful error in one of the enumerations of error urged in this appeal and reverse the trial court's judgment denying a new trial.

The crimes were committed in the late morning of August 25, 1975, while the victim, a Coweta County Deputy Sheriff, was patrolling a rural area of the county. The deputy testified that after he had stopped a car that did not have a license tag, the passenger whom the deputy identified as appellant, pointed a pistol at him. The driver of the vehicle handcuffed the deputy's hands behind his back. The two men then led the deputy into a wooded area where the driver beat and kicked the deputy until he lost consciousness. When the deputy awoke, he discovered that his pistol was missing. After his arrest one or two

days later, appellant confessed to the crimes and led police to the scene. His confession was admitted into evidence at his trial after a Jackson v. Denno hearing.

In his own defense appellant testified that on the day in question he was working on his car in Fairburn, Georgia. This alibi testimony was corroborated by seven other defense witnesses, each of whom had been with appellant at various times from early morning to the early afternoon of August 25, 1975. In explanation of his confession appellant testified that the sheriff was asking so many questions of him that he merely began answering "Yes" to all of them. Furthermore, he testified that he did not lead the police to the scene of the crimes, but, rather, was taken there by the police and asked if that were the place.

The jury began deliberations in the late afternoon of September 8, 1975, but did not return a verdict until the morning of September 10. In the interim, the jury was permitted to disperse at night and resume deliberations during the day. While the jury was deliberating the trial judge made several inquiries as to the numerical division of the jurors and also charged the jurors on their responsibility to reach a verdict if they could do so. This charge was substantially the same charge approved by this court in *Spaulding v. State,* 232 Ga. 411 (4) (207 SE2d 43) (1974). We do not agree with appellant's contention that the charge given by the trial judge and his subsequent inquiries of the jury were coercive in nature. In support of this conclusion, see *Spaulding v. State,* supra, and *Stone v. State,* 132 Ga. App. 703 (3 c) (209 SE2d 121) (1974); see also *Huffaker v. State,* 119 Ga. App. 742 (2) (168 SE2d 895) (1969); *Driver v. State,* 112 Ga. 229 (2) (37 SE 400) (1900); and, *O'Bryant v. State,* 222 Ga. 326 (6) (149 SE2d 654) (1966).

We have also considered the enumerated errors relating to the overruling of defense counsel's motions for a continuance and a mistrial. These motions were made on the grounds that counsel needed additional time to obtain a psychiatric evaluation of appellant and that appellant was unable to assist counsel in the preparation of his own defense. It is argued on appeal that these adverse rulings in the trial court deprived counsel of

adequate time to prepare a defense. We find no merit in these enumerations of error as no special plea of insanity was filed in the trial court and the trial judge acted within the bounds of his discretion in denying these motions.

A motion for a continuance is always addressed to the sound discretion of the trial court (*Dutton v. State,* 228 Ga. 850 (2) (188 SE2d 794) (1972)), and so is a request for a psychiatric examination of the defendant when a special plea of insanity has not been filed. *Holsey v. State,* 235 Ga. 270 (3) (219 SE2d 374) (1975). The trial court was informed only that appellant had been at Central State Hospital, for unspecified reasons, some six or seven years before the crimes were committed, and it appears that defense counsel did not question appellant's competency to stand trial until the night before trial when he was told of appellant's stay at Central State. Accordingly, we hold the trial court did not err by denying the motions for continuance or for mistrial.

On the second day of its deliberations the jury returned to the courtroom and made the following request: "We have requested yesterday if we could hear the transcript of Earnest Watkins [the appellant]. Can we have the record to hear the playback?" Defense counsel then made the following objection: "Your Honor, I would object to any purported testimony of Earnest Watkins be taken to the jury room. I think the law is that the jury is to take the facts from where they remember them and apply the law of the court to the facts as they remember them. I have never seen one of these machines. I have no idea how Earnest's testimony is going to come out. We'll object to any record of the testimony being taken into the jury room for Earnest Watkins' testimony without giving at least, giving us an opportunity to hear it or to see what it's going to do. I object strenuously to this." The trial judge overruled the objection, and after ascertaining that the court reporter's stenographic notes had not yet been transcribed but that the reporter had also tape recorded the trial testimony, the court ruled the reporter could play to the jury the tape of appellant's testimony. The tape was first reviewed in open court in the presence of appellant and his counsel. The transcript states that then "[t]he [tape] recording was made available to the jury at this

time."

At the direction of this court the trial judge has supplemented the record of these events and has now certified that only the requested tape recording of appellant's trial testimony was played to the jury by the court reporter in the jury room. This was done in the presence of the trial judge but outside the presence of appellant and his counsel and the district attorney. Defense counsel made no additional objection and did not request that he and appellant be present when the taped testimony was actually played for the jury.

A trial judge may, in his discretion, comply with a request of the jury to hear during their deliberation a portion of the trial testimony. *Person v. State,* 235 Ga. 814 (3) (221 SE2d 587) (1976). However, this procedure should be conducted in the presence of the defendant and his counsel. *Wade v. State,* 12 Ga. 25, 28 (1852); *Green v. State,* 43 Ga. 368, 373 (1871); *Johnson v. State,* 136 Ga. App. 719 (1) (222 SE2d 181) (1975). In our opinion, it was error for the trial judge to permit the testimony of appellant to be replayed to the jury in the jury room. Generally, the defendant has a right to be present at all stages of the trial when testimony is being heard or reheard by the jury. The jury should be returned to the courtroom to hear the testimony in the presence of both counsel and the appellant. This safeguards the fairness of the proceedings and protects the defendant's right to be heard that is essential to the orderly conduct of the trial.

The question remains, however, whether this error was harmful to appellant requiring a reversal and a new trial. The combination of several factors in this case persuades us that the error was not harmful to appellant and does not require a reversal of his conviction. First, we think it is significant that only appellant's testimony, which was favorable to him, was replayed for the jury. Thus, the rationale of the harmful error situations presented where evidence prejudicial to the defendant is allowed to go out with the jury and be reheard during the deliberations of the jurors is wholly absent in this case. Secondly, the trial judge personally supervised the playing by the court reporter of the requested part of the tape containing appellant's testimony to ensure fairness

to the appellant in the playing of the tape. In addition, defense counsel did not object to this procedure at the trial but finally objected only to the replaying of the testimony for the jury without first giving the defense an opportunity to review it. As the tape was first reheard in open court in the presence of counsel and all interested parties, and counsel made no further objection to it, we think counsel's initial objection was satisfied.

The circumstances of this case distinguish it from those cases in which harmful error has been shown. Instead, the present case is similar to *Proctor v. State*, 235 Ga. 720 (221 SE2d 556) (1975), where written statements of the defendant and several defense witnesses were erroneously permitted to go out with the jury but the error was held to be harmless under the facts of that case. We reach the same conclusion in this case but note that, under other circumstances, this error could be harmful and require reversal.

During his closing argument to the jury, the prosecutor stated, "[Y]ou can get up to ten years for forging a check, but you can stomp on somebody and kick him in the groin and not get but twelve months . . . Simple battery, twelve months is all he can get for that offense. The defendant, if found guilty on Count 2 and not guilty on Count 1, that's the most punishment that he can receive, twelve months." Defense counsel did not object to these remarks until after the trial court had charged the jury. At that time, counsel made a motion for mistrial based upon the improper closing argument of the district attorney.

The trial judge overruled the motion but called the jury to the courtroom and instructed them that they were to be concerned only with whether the defendant was guilty or not guilty and were not to be concerned with punishment in the event defendant was found guilty. Appellant argues on appeal that the trial judge's additional instruction to the jurors was insufficient to eliminate from their consideration the improper statement of the prosecutor and that it was, therefore, error to overrule his motion for mistrial. We do not agree with this contention.

In passing on a motion for mistrial because of an

improper statement of a prosecutor, the trial judge may take such action as in his judgment will prevent harm to the defendant, and a new trial will not be granted unless it is clear that such action failed to eliminate the statement from consideration by the jury. *Bradley v. State,* 234 Ga. 664, 668 (217 SE2d 264) (1975); *Howard v. State,* 229 Ga. 839, 840 (195 SE2d 14) (1972); *Moore v. State,* 228 Ga. 662, 664 (187 SE2d 277) (1972). In this case, we believe the trial judge's instruction to the jury was sufficient to protect appellant from the prejudicial effect of the prosecutor's closing remarks. Therefore, we hold the trial judge did not abuse his discretion in denying the motion for mistrial. See *Ford v. State,* 232 Ga. 511, 518 (207 SE2d 494) (1974); and *Woods v. State,* 233 Ga. 495, 498 (212 SE2d 322) (1975).

Two instances of alleged juror misconduct are urged in this appeal. One occurrence of alleged misconduct was not raised until after the trial was concluded when it was presented to the trial court in appellant's motion for a new trial. At the hearing on the motion for a new trial, appellant introduced affidavits of three jurors and also called five other jurors to testify as to this alleged misconduct. This evidence shows that during the course of the trial two jurors made an unauthorized visit to the scene of the crime and gauged the time it took to drive from there to appellant's house. Their findings, which were reported to the full jury, explained a critical time lapse in the sequence of events surrounding the alleged crime. The trial court denied appellant's motion for a new trial by applying the familiar rule that jurors cannot impeach their own verdict. Code Ann. § 110-109. See *Alley v. State,* 99 Ga. App. 322 (5) (108 SE2d 282) (1959); *Tolbirt v. State,* 124 Ga. 767 (1) (53 SE 327) (1905); and, *Williams v. State,* 206 Ga. 757 (58 SE2d 840) (1950).[1]

The provisions of this Code section were taken from prior decisions of this court and this rule of common law origin (that jurors cannot impeach their own verdict) is rooted deeply in Georgia law. There are a number of important public policy considerations underlying the

---

[1]See, also, Agnor's Georgia Evidence § 3-5A.

rule which prove its sagacity. Among these considerations are: the need to keep inviolate the sanctity of juror deliberations, the desirability of promoting the finality of jury verdicts and the necessity of protecting jurors from post-trial harassment.

All these are strong motivations for continued promotion of the policy embodied in this rule. But, the question we face in this case is whether there are any limitations on a broad application of the rule in every case. We think there are constitutional limitations which must be recognized to preserve the fundamental concept of a fair trial.

In Parker v. Gladden, 385 U. S. 363 (1966), the United States Supreme Court decided a case involving improper statements of a bailiff to a sequestered jury. The court applied constitutional safeguards in reaching its result which overturned the verdict. In Parker, supra, the Supreme Court stated, "[The Sixth Amendment] guarantees that 'the accused shall enjoy the right to a . . . trial, by an impartial jury . . . and be confronted with the witnesses against him. . .' As we said in Turner v. Louisiana, 379 U. S. 466, 472-473 [85 SC 546, 550, 13 LE2d 424] (1965), 'The evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.' " The court also stated that, "the rights of confrontation and cross-examination are among the fundamental requirements of a constitutionally fair trial." The court additionally found that the conduct of the bailiff involved such a probability that prejudice resulted that it was "inherently lacking in due process."

Using the rationale of Parker, we believe that the two jurors in the present case who made an unauthorized visit to the scene of the crime and then presented their findings to the other members of the jury in the jury room became, in a real sense, unsworn witnesses against the appellant in violation of the Sixth Amendment. See also People v. Hollingsworth, 22 Mich. App. 545 (177 NW2d 687) (1970); and, People v. De Lucia, 20 N. Y. 2d 275 (229 NE2d 211) (1967). The introduction into the jury room of extra judicial evidence by a juror has also been

condemned by other courts considering this problem. E.g., see United States v. Howard, 506 F2d 865 (5th Cir. 1975); Owen v. McMann, 435 F2d 813 (2d Cir., 1970). See also 58 ALR2d 556, Annot. Jury — Facts not Admitted in Evidence.

Under the circumstances of the present case, the rule prohibiting jurors from impeaching their own verdict cannot be applied without emasculating the constitutional right to a fair trial. Therefore, we hold the rule is inapplicable. See Government of Virgin Islands v. Gereau, 523 F2d 140 (7-9) (3d Cir. 1975). See, also, Waye v. State, 255 Ind. 136 (263 NE2d 165) (1970) (Jackson dissenting); People v. De Lucia, supra. The rule has a valid and salutary application in disallowing jurors to impeach their verdicts on the basis of statements made to one another in the jury room and the effect of those statements on the minds of the individual jurors. However, the intentional gathering of extra judicial evidence, highly prejudicial to the accused, by members of the jury and the communication of that information to the other jurors in the closed jury room is inimical to our present jury trial system. This misconduct cannot be ignored and requires a reversal of the judgment based on the jury's verdict in this case.[2]

The other instance of alleged juror misconduct was raised at trial before the jury returned a verdict. Thus, the rule prohibiting jurors from impeaching their verdict has no application to this instance. See *Livingston v. Wynne,* 147 Ga. 307, 308 (93 SE 877) (1917). Nevertheless, we find it unnecessary to review the trial court's ruling on this issue in view of our determination that a new trial must be ordered because of the juror misconduct discussed in this

---

[2]Cf. *Wisdom v. State,* 234 Ga. 650 (217 SE2d 244) (1975), in which the rule prohibiting jurors from impeaching their own verdict was applied. In that case, the defendant submitted an affidavit executed by one of the jurors which stated that a newspaper article published the day the verdict was rendered influenced his verdict. This court also found that the newspaper article contained no information prejudicial to the defendant.

opinion.

*Judgment reversed. All the Justices concur.*

ARGUED MAY 10, 1976 — DECIDED OCTOBER 5, 1976.

*Sanders, Mottola, Haugen, Wood & Goodson, Parnell Odom, Theo D. Mann,* for appellant.

*William F. Lee, Jr., District Attorney, Arthur K. Bolton, Attorney General, Kirby G. Atkinson, Staff Assistant Attorney General,* for appellee.