## 72732. BAKER v. THE STATE.
(348 SE2d 128)

DEEN, Presiding Judge.

Appellant Baker was convicted on three counts: rape, kidnapping

with bodily injury, and aggravated assault with intent to rape. The first two charges pertained to the same incident; the third involved a different victim and took place at a different location, some eighteen days after the other incident.

In the first incident the recently widowed victim, returning to her apartment after accompanying her mother-in-law to the grave of her late husband, observed a man dressed in blue jeans and plaid shirt standing near the entrance to her apartment. She testified that she paid the man no particular attention at the time because in dress and demeanor he looked as if he might be one of the construction workers who, for several days, had been working around the apartment complex. A few minutes later, however, her doorbell rang, and when she went to the door the same man told her that she had left her car's headlights on. She changed into casual clothes and went out to the car, opened the unlocked door, and reached in to turn off the lights (which she did not remember having left on). Suddenly she was grabbed from behind, a knife was placed at her throat, and a male voice ordered her to remain silent or suffer the consequences. She was dragged into a nearby wooded area and thrown to the ground. Her assailant fell on top of her and asked if there was anyone in her apartment. When she replied in the negative, the man again threatened her verbally and, still holding the knife to her throat, took her to the apartment, where he examined each room. Appellant testified that during the assailant's tour of the apartment he was careful to touch nothing — not even the light switches, which he ordered her to turn on as they entered each room.

Apparently satisfied that no one else was in the apartment, the man ordered the victim to disrobe and face the wall. He raped her at knifepoint and ordered her to remain facing the wall for five minutes. When she heard the outer door slam, she ran and locked it and summoned police. She provided the officer who responded to the call with a detailed description of the assailant's physical appearance and clothing. Although the victim stated that her assailant had touched nothing in the apartment, investigating officers nevertheless attempted to take fingerprints from the apartment and automobile, but found none definitely attributable to the perpetrator. Results of the physical examination and laboratory tests performed on the victim shortly after the rape yielded no conclusive evidence which, after apprehension of the appellant, either affirmatively implicated or affirmatively excluded him as the possible assailant.

Nearly three weeks later another woman, who had gone to a Kroger store at about 11:30 p.m. to pick up items her son needed for school the next day, was suddenly and forcefully pushed into her car as she opened the door. The assailant fell on top of her and put his hand over her mouth, and the woman promptly bit him. (Photo-

graphs showing teeth marks on the appellant's hand were introduced at trial.) Just then another car pulled up to park on the passenger side of the victim's car, and the assailant raised his head in alarm and then ran away. At that time his face was clearly visible in the overhead parking lot lights and the headlights of the approaching car. The victim ran into the store and reported the incident, and a police officer was on the scene in approximately one minute. The victim provided a detailed description of the man's physical appearance and stated that he was wearing blue jeans and a plaid shirt. A store employee reported having seen the face of a person matching the physical description in a nearby area of the shopping mall where the Kroger was located, and a person answering the description as to physical appearance and clothing (subsequently identified as appellant) was shortly apprehended. The employee immediately identified him as the person he had seen. The victim, after breaking down and bursting into tears on her first attempt at identifying him, gathered herself emotionally and made a positive identification. All of this took place within a time period lasting between fifteen and thirty minutes, according to witnesses' testimony. While making his report on this incident, the investigating officer realized that the person in custody resembled the composite drawing and description on file in connection with the earlier incident and got in touch with the officer in charge of that investigation. The victim in the former incident then positively identified appellant from a live line-up.

At trial appellant denied having attacked either woman. He accounted for his presence at the shopping center at the time of the second incident by asserting that he had stopped at the Kroger store to purchase five packs of Marlboro cigarettes and had remained in the area for a short while because of trouble in starting his car. The state introduced into evidence the Kroger cash register tapes, which bore no entry indicating the purchase of five packs of Marlboros. Both victims positively identified appellant at trial.

Following conviction, appellant moved for a new trial on the general grounds and, by amendment, on the ground that one or more of the jurors had visited the shopping center where the second incident occurred and had influenced other jurors against appellant by giving them allegedly impeaching information regarding the physical layout of the area. At the hearing on the motion for new trial, all of the jurors were questioned individually as to whether they had visited the shopping center or had been influenced by statements of other jurors who had gone there. Most of the jurors testified that, as residents of the area, they had been in the shopping center in the past; some testified that during the trial they had been to the center as a part of their customary shopping routines; one testified that he had visited the center expressly to clear up confusion in his mind as to some details

of the layout, but that he had made no statement that would influence other jurors. All the jurors testified that they recalled hearing no statements about the shopping center by other jurors, other than the bare mention of having been there; one juror qualified her statement by saying that she remembered a juror's (she did not remember which one) saying something about the lighting conditions near the Kroger store. The jurors testified unanimously, however, that the chief factor in their determination of appellant's guilt on each of the charges was the positive identifications made by the victims, both before and during trial. The court denied the motion for new trial. On appeal Baker enumerates as error (1) the trial court's denial of his motion for mistrial on the ground of an allegedly improper remark by the prosecutor during closing argument; (2) the denial of the motion for new trial on the ground of the jurors' allegedly improper visits to the scene of the crime charged in Count III, and their allegedly improper reports to the other jurors; and (3) the sufficiency of the evidence. *Held*:

1. Examination of the trial transcript reveals that the prosecutor made the following remark in the course of his closing argument: "The issue here is whether or not [the victim in the first incident] remembers the man who attacked her . . . You remember things like that . . . Now let's look at what this defendant did to try and stop the [victim] from remembering. He kept hitting her in the face: Don't look at me. He got dressed away from the bed. He didn't touch anything in the apartment . . . Ladies and gentlemen, that man there is a pro. He knows how the State works, and he knows how to avoid it." Defense counsel moved for a mistrial on the ground that the prosecution had impermissibly placed the defendant's character at issue by implying that he was a practiced criminal. The trial court denied the motion.

Whether a mistrial should be granted for an allegedly improper remark by counsel is a matter within the sound discretion of the trial court. OCGA § 17-8-75; *Ward v. State*, 252 Ga. 85 (311 SE2d 449) (1984). The trial court's denial of such a motion will not be the basis for a new trial unless it appears that the court clearly abused its discretion. *Tate v. State*, 153 Ga. App. 508 (265 SE2d 818) (1980). It is well settled that the prosecutor has considerable latitude in illustration and imagery when he is making his argument to the jury. *Blue v. State*, 170 Ga. App. 304 (316 SE2d 862) (1984). In the absence of a demonstration that a mistrial is essential to the preservation of the defendant's right to a fair trial, it is not an abuse of the trial court's discretion to deny the motion for mistrial even if no curative instructions are given the jury. *O'Neal v. State*, 170 Ga. App. 637 (318 SE2d 66) (1984).

In the instant case the challenged remarks were made in the context of the rape victim's testimony that her assailant took great pre-

cautions against being identified: e.g., ordering the victim not to face him, taking care to touch nothing in the apartment. Seen in the proper context, the remark did not imply that the assailant was a professional criminal, but rather that he took scrupulous — or "professional" — care to incur no unnecessary risk of being identified. To give "curative" instructions in such an instance would merely have called attention to the allegedly improper phrase, "a pro," and would thus have been more harmful to the defendant's case than otherwise. We find no merit in this enumeration of error.

2. Appellant's second enumeration of error, of course, pertains only to the incident giving rise to Count III, aggravated assault with intent to rape. One of the recognized exceptions to the rule that jurors cannot impeach their own verdict is the sort of juror misconduct in which the jurors conduct some sort of extrajudicial inquiry and, in effect, become "unsworn witnesses against the [defendant] in violation of the Sixth Amendment." *Watkins v. State*, 237 Ga. 678, 684 (229 SE2d 465) (1976). In *Chadwick v. State*, 164 Ga. App. 102 (296 SE2d 398) (1982), a juror visited the crime scene the night before the verdict was reached, and reported his observations to the other jurors before they had agreed upon a verdict. Another juror conducted an informal experiment to test the defense's claim that a revolver had slipped off the seat of an automobile. Afterwards, none of the jurors could remember which jurors had gathered and reported the information, or what had actually been said about the extrajudicial activities; moreover, each juror testified affirmatively that his verdict was based upon the evidence adduced at trial. In reviewing *Chadwick* this court held, at 103, that *Watkins* had "not fashioned a broad rule" which would generally permit jurors to impeach their verdict, but that the general rule against impeachment was rendered inapplicable only by the "intentional gathering of extra judicial evidence, highly prejudicial to the accused, by members of the jury and the communication of that information to the other jurors in the closed jury room." *Watkins*, supra at 685. In *Chadwick* we went on to distinguish that case from *Watkins* on the basis of *Watkins'* inclusion of the words "highly prejudicial," supra. In *Watkins* the jurors' extrajudicial investigation concerned a point critical to the prosecution's case; in *Chadwick,* on the other hand, the extrajudicial activity concerned a less significant matter and, moreover, was not "reported" in such a way as to influence the other jurors.

We find *Chadwick* to be on point with the instant case. The acts that allegedly constituted juror misconduct did not concern essentials and were not systematically undertaken or communicated: the jurors had only vague recollections of having heard of some such activity and testified unanimously that their verdict was based on evidence heard at trial rather than on any extrajudicial communication; more-

over, the only "solid" bit of evidence reported by the juror who had admittedly visited the scene so as to clear up confusion about the physical layout was that his observations created some doubt in his mind as to whether the store clerk had been able to see the person lurking near the store clearly enough to permit a positive identification. Thus the net effect of the alleged misconduct would have been prejudicial to the prosecution's case, not that of the defendant. In light of the other evidence presented at trial, we find it highly probable that this alleged misconduct, even if it were held to be error, would not have contributed to the verdict of guilty. *Johnson v. State*, 238 Ga. 59, 61 (230 SE2d 869) (1976). Cf. *Bobo v. State*, 254 Ga. 146 (327 SE2d 208) (1985); see also *Moore v. State*, 179 Ga. App. 125 (345 SE2d 631) (1986). This enumeration is also without merit.

3. Our review of the record of the instant case reveals that there was an abundance of competent evidence which would authorize the reasonable trier of fact to find appellant guilty as charged, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). This enumeration, too, is devoid of merit.

*Judgment affirmed. Benham and Beasley, JJ., concur.*

DECIDED JULY 16, 1986.

*Joseph M. McLaughlin*, for appellant.

*Thomas C. Lawler III, District Attorney, Daniel J. Porter, Assistant District Attorney*, for appellee.