A03A0700. NEWSON v. FOSTER.
(581 SE2d 666)

BLACKBURN, Presiding Judge.

In this civil action regarding an automobile accident, Kenya Shaneke Newson appeals, contending that the trial court did not have the power to grant a new trial to Aubrey Foster based on a juror's testimony that the jury foreperson personally investigated the scene of the accident. We agree and reverse.

"[M]otions for new trial because of improper conduct of jurors or parties are addressed to the sound discretion of the trial judge. Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination." (Punctuation omitted.) *Riddle v. Beker*.[1]

---

[1] *Riddle v. Beker*, 232 Ga. App. 393, 394 (501 SE2d 893) (1998).

Foster filed a civil action against Newson for personal injuries sustained in an automobile accident. The case went to trial on April 17, 2002, and the jury returned a verdict for Newson on the same day. Final judgment was entered in Newson's favor on May 10, 2002.

On May 24, 2002, Foster filed a motion for new trial on the grounds that the verdict was contrary to the evidence, and that the verdict was based on the alleged misconduct of a juror who visited the accident scene. Foster later filed an amendment to the motion for new trial to which she attached the affidavit of Glenna Goff, one of the jurors. In the affidavit, Goff stated that a member of the jury visited and investigated the accident scene, and reported his findings and conclusions to the rest of the jurors on the panel, who relied, in part, on his findings and conclusions during deliberation of the case. The juror who had visited the scene of the accident was later identified as Tony Teasley, the jury foreperson.

The trial court held an evidentiary hearing at which both Goff and Teasley testified. Goff testified that Teasley told the jurors that he had been to the accident scene and that a certain distance contested in the trial was more in line with Newson's position than Foster's. She also said that she relied, in part, on Teasley's statement in deciding to vote for a defendant's verdict. Teasley admitted that he had visited the scene during the lunch break and had provided information to the jury concerning the disputed distances. On the basis of the testimony of these two jurors, the trial court granted Foster's motion for new trial.

The trial court erred in reaching this conclusion. "A long-standing principle of Georgia law provides that 'affidavits of jurors may be taken to sustain but not to impeach their verdict.' OCGA § 9-10-9. This prohibition includes oral testimony offered at a hearing. *PIE Nationwide v. Prickett*[2] (physical precedent only, but cited with approval in *Fidelity Nat. Bank v. Kneller*[3])." *Riddle*, supra at 393.

"In passing upon a motion for new trial, the trial judge has no power to receive, hear, or consider affidavits of jurors submitted for the purpose of impeaching their verdict, though submitted without objection. That a juror will not be heard to impeach his verdict is too plain to be misunderstood by the bench or the bar." (Citation omitted.) *Wellbeloved v. Wellbeloved*.[4]

We must emphasize that, because this is a civil case rather than a criminal proceeding, the type of judicial misconduct at issue here does not provide grounds for reversal. In a criminal case, however,

---

[2] *PIE Nationwide v. Prickett*, 189 Ga. App. 77 (374 SE2d 837) (1988).
[3] *Fidelity Nat. Bank v. Kneller*, 194 Ga. App. 55, 59 (390 SE2d 55) (1989).
[4] *Wellbeloved v. Wellbeloved*, 209 Ga. 709, 711 (4) (75 SE2d 424) (1953).

the result might be different. Exceptions to OCGA § 9-10-9, such as the use by jurors of extrajudicial information, apply only in criminal cases in "certain very limited occasions where human life or liberty sways in the balance. But such compelling personal interests of life and liberty rarely are at issue in civil litigation and are not so at issue in this case." *Perry v. Rosenbaum.*[5]

In this civil case, the trial court's decision to grant the motion for new trial was based upon the testimony of the two original jurors; this testimony impeached the verdict which they had returned. Thus, the trial court's decision was based solely upon evidence which the trial court had "no power to receive, hear, or consider." *Wellbeloved,* supra. Accordingly, we hold that the trial court abused its discretion in granting the motion for new trial.

*Judgment reversed. Phipps, J., concurs. Ellington, J., concurs specially.*

ELLINGTON, Judge, concurring specially.

I fully concur in this opinion; however, I write separately to question whether our courts should recognize an additional exception to the rule against the admission of juror testimony to impeach a verdict. Where a civil litigant discovers shortly after trial that a juror was in effect a witness against him, I believe fairness requires at a minimum that the trial judge be allowed to receive oral testimony regarding the impact of such extrajudicial evidence on the outcome of the case. I believe our appellate courts, recognizing "the need to keep inviolate the sanctity of juror deliberations, the desirability of promoting the finality of jury verdicts and the necessity of protecting jurors from post-trial harassment,"[6] have unjustifiably deleted an important exception to the ancient common law rule against jurors impeaching their own verdicts, a rule almost universally traced to Lord Mansfield's decision in *Vaise v. Delaval,* 1 Term. R. 11 (99 Eng. Rep. 944) (K. B. 1785).[7] As the Supreme Court of the United States has noted, the "firmly established common-law rule in the United States flatly prohibit[ing] the admission of juror testimony to impeach a jury verdict" was subject to an exception "in situations in which an 'extraneous influence,' was alleged to have affected the jury." (Citations omitted.) *Tanner v. United States,* 483 U. S. 107, 117

---

[5] *Perry v. Rosenbaum,* 205 Ga. App. 784, 787 (3) (423 SE2d 673) (1992).

[6] *Watkins v. State,* 237 Ga. 678, 684 (229 SE2d 465) (1976).

[7] See *McDonald v. Pless,* 238 U. S. 264 (35 SC 783, 59 LE 1300) (1915); *Bishop v. State,* 9 Ga. 121, 126 (1850). But see Cammack, The Jurisprudence of Jury Trials: the No Impeachment Rule and the Conditions for Legitimate Legal Decisionmaking, 64 U. Colo. L. Rev. 57, 59-64 (1993) (questioning the importance of *Vaise v. Delaval*).

(107 SC 2739, 97 LE2d 90) (1987).[8] Viewed in this context, I believe that OCGA § 9-10-9 (and its criminal procedure corollary, OCGA § 17-9-41) should not be interpreted to deprive a trial judge of the "power to receive, hear, or consider" affidavits and oral testimony of jurors under these circumstances, specifically, (1) the subject of the impeachment is jurors' misconduct in obtaining and relying on extrajudicial information in reaching their verdict, and, (2) a litigant brings evidence of the misconduct to the trial court's attention within the time allowed for a motion for new trial and for a motion to set aside a judgment.

As the majority correctly notes, however, our state Supreme Court has recognized an exception only in very limited circumstances in criminal cases. Compare *Watkins v. State*, 237 Ga. 678, 684-685 (229 SE2d 465) (1976), with *Wellbeloved v. Wellbeloved*, 209 Ga. 709, 711 (4) (75 SE2d 424) (1953), as quoted by the majority. Accordingly, I believe, like then-Judge Carley in his special concurrence in *Lozynsky v. Hairston*, 168 Ga. App. 276 (308 SE2d 605) (1983) (physical precedent only), that we have no alternative but to reverse the trial court's grant of appellee's motion for new trial. As then-Judge Carley so eloquently stated 20 years ago:

> This case presents a situation wherein the principle of law requiring that jurors make their decision solely upon the evidence adduced at trial conflicts directly with the principle of law that a juror may not be heard to impeach his own verdict. Unfortunately, the cases seem to inflexibly declare that the former must yield to the latter.

Id. at 277 (Carley, J., concurring specially). As in that case, the jurors' misconduct in this case was egregious and greatly affected the deliberations and verdict of the jury. Like then-Judge Carley, however, I can find no basis under Georgia law for an applicable excep-

---

[8] Since July 1, 1975, the federal rules of evidence have included the extraneous influence exception in the codification of the no-impeachment rule by providing in Rule 606 (b), as follows:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, *except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.* Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

(Emphasis supplied.) Federal Rules of Evidence Rule 606, 28 USC.

tion to the proscription of impeachment of a verdict by jurors, and, therefore, I am constrained to concur with the majority.

DECIDED APRIL 17, 2003.

*Austin & Sparks, John B. Austin*, for appellant.
*Tisinger, Tisinger, Vance & Greer, Glenn M. Jarrell, Rufus Smith, Jr.*, for appellee.